No. 24-6490

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

MANDRIEZ SPIVEY,

*Plaintiff-Appellant,*

v.

MICHAEL BRECKON, et al.,

*Defendants-Appellees.*

---

On Appeal from the U.S. District Court for the
Western District of Virginia at Roanoke
Case No. 7:20-cv-00400-MFU-JCH

---

## OPENING BRIEF OF PLAINTIFF-APPELLANT

---

Samuel Weiss
D Dangaran
RIGHTS BEHIND BARS
1800 M St. NW
Fnt. 1 #33821
Washington, DC 20033
202-455-4399
d@rightsbehindbars.org

Devi M. Rao
Wynne Muscatine Graham
RODERICK & SOLANGE
 MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
202-869-3449
wynnemg@macarthurjustice.org

*Counsel for Plaintiff-Appellant*

Case No. 24-6490    Mandriez Spivey v. Michael Breckon, et al.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Local Rule 26.1,

1. Party is not a publicly held corporation or other publicly held entity.

2. Party does not have any parent corporations,

3. Party has no stock owned by a publicly held corporation or other publicly held entity.

4. There is no other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation.

5. The party is not a trade association.

6. This case does not arise out of a bankruptcy proceeding.

7. This is not a criminal case in which there was an organizational victim.

Dated: November 19, 2024        */s/ Wynne Muscatine Graham*
                                Wynne Muscatine Graham

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.................................................i

TABLE OF CONTENTS .................................................................ii

TABLE OF AUTHORITIES...........................................................iv

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT........................................................2

ISSUES PRESENTED .................................................................3

STATEMENT OF THE CASE ........................................................3

I.   Factual Background...........................................................3

    A.  Defendants Bowles, Mullins, and Cantrell Placed Mr. Spivey in Excessively Tight Restraints and Repeatedly Assaulted Him While He Was Incapacitated; Defendants Phelps and Smith Declined to Help; and Defendant McIntyre Denied Mr. Spivey Medical Treatment For His Injuries. ...............................................4

    B.  Defendant Kirby Denied Mr. Spivey Medical Care For Profuse Rectal Bleeding And Severe Stomach Pain. ........................................6

    C.  Defendants Pease and Breckon Denied Mr. Spivey Medical Care For His Serious Dental Conditions. ...................................................7

    D.  Defendants Cunic, Babnew, and Bailey Denied Mr. Spivey Mental Health Treatment For His Severe and Recurrent Depressive Disorder..............................................................................8

    E.  Defendant Moore Repeatedly Assaulted Mr. Spivey During Pat-Down Searches..................................................................8

    F.  Officials Prevented Mr. Spivey From Accessing Administrative Remedies. ............................................................................9

II.  Procedural History...........................................................9

SUMMARY OF ARGUMENT ...........................................................11

STANDARD OF REVIEW................................................................13

ARGUMENT ........................................................................................ 13

I.   Mr. Spivey Has a Cognizable *Bivens* Action for his Eighth
Amendment Medical Care Claims Under *Abbasi*'s First Step. .............. 13

    A.  The Supreme Court and this Court have Repeatedly Affirmed
the Availability of *Bivens* Causes of Action in Existing Contexts
Under *Abbasi*'s First Step. ............................................................. 14

    B.  The District Court Committed a Series of Errors in Holding that
Mr. Spivey's Medical Care Claims Are Meaningfully Different From
Those in *Carlson*. ............................................................................ 19

        i. The District Court Erred in Concluding that Mr. Spivey's
Medical Conditions and Lack of Treatment Render his
Claims Meaningfully Different from Those in *Carlson*. ......... 20

        ii. The District Court Also Erred in Holding That the Availability
of Alternative Remedies Rendered Mr. Spivey's Claims New
Under *Abbasi*'s First Step. .................................................... 311

II.  Mr. Spivey Has A Cognizable *Bivens* Cause of Action for His Claims
Under *Abbasi*'s Second Step Pursuant to this Court's Recent Decision in
*Fields v. Federal Bureau of Prisons*. ...................................................... 36

    A.  *Bivens* Extends to Mr. Spivey's Excessive Force Claims. ........... 38

    B.  Mr. Spivey's Medical Care Claims Can Proceed Under *Carlson*;
In the Alternative, a *Bivens* Remedy Extends to Them Per *Fields*. .. 41

CONCLUSION ................................................................................... 43

STATEMENT CONCERNING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Fuson,*
  No.23-5342, 2024 WL 1697766 (6th Cir. 2024) ................................. 30

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................. 13, 20, 21

*Bivens v. Six Unknown Named Agents of the Federal Bureau
  of Narcotics,*
  403 U.S. 388 (1971) ................................................................. 9, 14, 22

*Bulger v. Hurwitz,*
  62 F.4th 127 (4th Cir. 2023) ........................................................ 29, 37

*Carlson v. Green,*
  446 U.S. 14 (1980) ..................................................................... *passim*

*Carlucci v. Chapa,*
  884 F.3d 534 (5th Cir. 2018) .............................................................. 26

*Cecil v. Reliance Standard Life Ins. Co.,*
  No. 7:05-CV-00003, 2005 WL 2291225 (W.D. Va. Sept. 19,
  2005) ................................................................................................. 6

*Chambers v. Herrera,*
  78 F.4th 1100 (9th Cir. 2023) ............................................................ 25

*Colonial Penn Ins. Co. v. Coil,*
  887 F.2d 1236 (4th Cir. 1989) ............................................................. 6

*Cross v. Buschman,*
  No. 22-3194, 2024 WL 3292756 (3d Cir. July 3, 2024) ................. 26, 28

*Davis v. Passman,*
  442 U.S. 228 (1979) ....................................................................... 14, 29

*DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.,*
  489 U.S. 189 (1989) ................................................................. 16

*Edwards v. Gizzi,*
  107 F.4th 81 (2d Cir. 2024) .................................................... 18

*Egbert v. Boule,*
  596 U.S. 482 (2022) .................................................... 14, 27, 32

*Erickson v. Pardus,*
  551 U.S. 89 (2007) ................................................................. 16

*Estelle v. Gamble,*
  429 U.S. 97 (1976) ................................................................. 16

*Fields v. Federal Bureau of Prisons,*
  109 F.4th 264 (4th Cir. 2024) ........................................ *passim*

*Flood v. Kuhn,*
  407 U.S. 258 (1972) ............................................................... 35

*Hernandez v. Mesa,*
  589 U.S. 548 (2017) ............................................................... 23

*Hernandez v. Mesa,*
  589 U.S. 93 (2020) ........................................................... 14, 27

*Hicks v. Ferreyra,*
  64 F.4th 156 (4th Cir. 2023) ......................................... *passim*

*Hodges v. Meletis,*
  109 F.4th 252 (4th Cir. 2024) .............................................. 31

*Hohn v. United States,*
  524 U.S. 236 (1998) ............................................................... 28

*Hurst v. Derr,*
  No. 23-15523, 2024 WL 3842097 (9th Cir. Aug. 16, 2024)..... 25, 32, 34

*Jackson v. Lightsey,*
  775 F.3d 170 (4th Cir. 2014) ................................................ 13

*King v. United States,*
  536 Fed. App'x 358 (4th Cir. 2013) .................................................... 24

*Langford v. Joyner,*
  62 F.4th 122 (4th Cir. 2023) ............................................................ 24

*Lewis v. Shah,*
  466 Fed. App'x 211 (4th Cir. 2012) ............................................ 24, 28

*Masias v. Hodges,*
  No. 21-6591, 2023 WL 2610230 (4th Cir. Mar. 23, 2023) 23, 24, 28, 33

*Mays v. Smith,*
  70 F.4th 198 (4th Cir. 2023) ........................................................ 29, 37

*McCarthy v. Madigan,*
  503 U.S. 140 (1992) .......................................................................... 32

*Ortiz v. Webster,*
  655 F.3d 731 (7th Cir. 2011) ........................................................... 26

*Quinones-Pimentel v. Cannon,*
  85 F.4th 63 (1st Cir. 2023) .............................................................. 30

*Scinto v. Federal Bureau of Prisons, et al.,*
  No. 5:10-ct-03165-D, 2011 WL 6780803 (E.D.N.C. Dec. 27,
  2011) ................................................................................................. 33

*Scinto v. Stansberry,*
  841 F.3d 219 (4th Cir. 2016) ................................................ 12, 23, 33

*Hines ex rel. Sevier v. Sec'y of Dep't of Health & Hum. Servs.,*
  940 F.2d 1518 (Fed. Cir. 1991) ......................................................... 6

*Smith v. Sines,*
  No. 23-6110, 2024 WL 4164275 (4th Cir. 2024) .............................. 29

*Snowden v Henning,*
  72 F.4th 237 (7th Cir. 2023) ........................................................... 18

vi

*Stanard v. Dy,*
88 F.4th 811 (9th Cir. 2023) ........................................................ 25, 34

*Tate v. Harmon,*
54 F.4th 839 (4th Cir. 2022) ........................................................ 30, 37

*TFWS, Inc. v. Franchot,*
572 F.3d 186 (4th Cir. 2009) ............................................................. 28

*Thompson v. Commonwealth of Virginia,*
878 F.3d 89 (4th Cir. 2017) ............................................................... 39

*Tun-Cos v. Perrotte,*
922 F.3d 514 (4th Cir. 2019) ............................................................. 30

*United States v. Townsend,*
886 F.3d 441 (4th Cir. 2018) ............................................................... 6

*Vaughn v. Bassett,*
No. 22-10962, 2024 WL 2891897 (5th Cir. June 10, 2024) .... 26, 28, 34

*Watanabe v. Derr,*
115 F.4th 1034 (9th Cir. 2024) ....................................... 12, 25, 26, 28

*Wise v. Lappin,*
674 F.3d 939 (8th Cir. 2012) ............................................................. 26

*Ziglar v. Abbasi,*
582 U.S. 120 (2017) ................................................................. *passim*

**Statutes**

28 U.S.C. § 1291 ................................................................................. 3

28 U.S.C. § 1331 ................................................................................. 2

28 U.S.C. § 2201 ................................................................................. 2

42 U.S.C. § 1983 ............................................................................... 24

Prison Litigation Reform Act of 1995, 110 Stat. 1321-71 ...................... 32

**Other Authorities**

Federal Rule of Appellate Procedure 4(a)(1)(B)(iv)....................................3

Federal Rule of Civil Procedure 12(b)(6) .................................................10

## INTRODUCTION

Officials at USP Lee repeatedly violated Mandriez Spivey's constitutional rights. One officer touched Mr. Spivey inappropriately when conducting pat-down searches. And several officers placed Mr. Spivey in agonizingly tight restraints without provocation, forced him to kneel, and then assaulted him in shifts, smashing his head into a wall over and over again, and digging a shield into his back and legs. Officials then denied Mr. Spivey timely medical care for the injuries he sustained. Meanwhile, throughout his time as USP Lee, officials denied Mr. Spivey timely care for profuse rectal bleeding and extreme stomach pain; a cascade of painful dental conditions; and "recurrent and severe" major depressive disorder. When Mr. Spivey tried to make use of the prison's administrative remedy process for these constitutional violations, officials thwarted his efforts.

Once in federal court, the district court dismissed Mr. Spivey's medical care and excessive force claims without reaching the merits, concluding that a *Bivens* cause of action did not exist for either set of claims. This was error. With respect to Mr. Spivey's medical care claims, the Supreme Court has repeatedly reaffirmed—and this Court has

1

consistently recognized—over several decades that a *Bivens* cause of action is available for such claims pursuant to *Carlson v. Green*, 446 U.S. 14 (1980). To reach the opposite conclusion, the district court construed Mr. Spivey's claims in a light unfavorable to him, and pointed to trivial facts that this Court has already deemed irrelevant.

Moreover, this Court's recent decision in *Fields v. Federal Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024)—decided after the district court issued its ruling—makes clear that even if Mr. Spivey's medical claims were distinguishable from *Carlson*, *Bivens* should extend to them nonetheless. *See* 109 F.4th 264, 267 (4th Cir. 2024). And *Bivens* must extend to Mr. Spivey's excessive force claims per *Fields*, where this Court found a new *Bivens* cause of action to be available for substantially similar excessive force claims.

This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this federal civil-right action under 28 U.S.C. § 1331 and § 2201. The court issued its final judgment on March 18, 2024. J.A. 162. Mr. Spivey timely appealed on May 17, 2024.

J.A. 163; Fed. R. App. P. 4(a)(1)(B)(iv). This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.  In *Ziglar v. Abbasi*, 582 U.S. 120, 135–36 (2017), the Court laid out a two-step analysis for *Bivens* claims. Under the first step, a *Bivens* action is available for claims that arise in contexts already recognized by the Court. Eighth Amendment claims challenging prison officials' deliberate indifference to serious medical needs are one such context. *See Carlson v. Green*, 446 U.S. 14 (1980). Does Mr. Spivey's textbook Eighth Amendment claim challenging prison officials' deliberate indifference to his serious medical needs present a *Bivens* cause of action?

2.  Under the second step of the *Abbasi* analysis, courts must extend *Bivens* causes of action to new contexts if there are no special factors counseling otherwise. 582 U.S. at 135–36. This Court recently held in *Fields v. Federal Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024), that there were no special factors counseling against the extension of *Bivens* to an excessive force claim brought against federal prison officials that did not implicate prison policy or systemic practice, and for which administrative remedies were made unavailable by officials. Should *Bivens* also extend to Mr. Spivey's claims under *Abbasi*'s second step, given that they similarly do not implicate prison policy or systemic practice, and officials also thwarted his efforts to pursue administrative remedies?

## STATEMENT OF THE CASE

### I.  Factual Background

3

**A.** **Defendants Bowles, Mullins, and Cantrell Placed Mr. Spivey in Excessively Tight Restraints and Repeatedly Assaulted Him While He Was Incapacitated; Defendants Phelps and Smith Declined to Help; and Defendant McIntyre Denied Mr. Spivey Medical Treatment For His Injuries.**

While Plaintiff Mandriez Spivey was incarcerated at USP Lee, his cellmate tore up a towel or sheet to make rags. J.A. 17. The cellmate admitted what he had done to Defendant James Bowles, a lieutenant. J.A. 17. But Bowles demanded that Mr. Spivey be searched as a result of his cellmate's conduct. J.A. 17. Bowles forced Mr. Spivey to undress and get into paper clothes that did not fit, leaving Mr. Spivey's buttocks exposed. J.A. 18–19. When Mr. Spivey raised questions about why he could not keep his own clothes on, Bowles threatened to restrain Mr. Spivey or put him in chains. J.A. 17.

Mr. Spivey complied and undressed, but Bowles ordered Defendant Officers Phillip Mullins and William Cantrell to put Mr. Spivey in restraints anyway. J.A. 18. Mullins and Cantrell made the restraints too tight around Mr. Spivey's wrists, ankles, and sides. J.A. 18–19. Mr. Spivey notified Defendant Nancy Smith, a nurse, and Defendant James Phelps, a captain, that the restraints were cutting into his body, but the Defendants did not adjust them. J.A. 18. The restraints caused "severe pain" and "scarring." J.A. 19.

4

While incapacitated by three sets of restraints, Mr. Spivey was forced by officers to kneel in a cell reeking of urine and feces. J.A. 18. The officers gave Mr. Spivey a helmet and then repeatedly slammed his head into a wall. J.A. 18–19. Mullins or Cantrell also pressed a shield onto Mr. Spivey's back, ground the edge of the shield into his calves and ankles, and stepped on his toes. J.A. 19.

The officers then left Mr. Spivey in the foul-smelling cell on his knees and tightly restrained, coming back periodically to assault him and slam his head into the wall. J.A. 19. When Bowles' shift ended, another officer "took command . . . for the 'second shift,'" during which both Mullins and Cantrell continued to assault Mr. Spivey. J.A. 19.

At some point, Defendants Jessica Babnew and Lauren Bailey, two psychologists employed at USP Lee, entered the cell to speak with Mr. Spivey. J.A. 19. While the psychologists were with Mr. Spivey, one of the officers unnecessarily jerked Mr. Spivey's head downward, towards Mr. Spivey's crotch. J.A. 19. One of the psychologists then "joked about speaking with [Mr. Spivey] while he was in pain." J.A. 19.

The restraints and abuse caused Mr. Spivey to suffer "severe" pain in his neck, back, legs, and feet. J.A. 19–20. He notified Defendant Nurse Wanda McIntyre that he needed medical attention for the significant pain he was in, but she refused to allow him to receive medical care. J.A. 20. As a result, Mr. Spivey continued to suffer in pain throughout his stay

5

at USP Lee. J.A. 20. He also experienced "emotional and mental distress" as a result of officers' use of force and his subsequent denial of medical care. J.A. 20. He continued to suffer both physical and emotional pain at the time he filed his complaint. J.A. 20.

### B. Defendant Kirby Denied Mr. Spivey Medical Care For Profuse Rectal Bleeding And Severe Stomach Pain.

While at USP Lee, Mr. Spivey also began experiencing profuse bleeding from his rectum, accompanied by severe stomach pain. J.A. 22. He informed Defendant Thomas Kirby, a physician's assistant, of these symptoms. J.A. 22. Despite the dangerous conditions that Mr. Spivey's symptoms reflect,[1] Kirby denied Mr. Spivey emergent medical attention by a doctor.[2] J.A. 22. After administering a fecal test, Kirby provided no treatment for Mr. Spivey's pain or bleeding. J.A. 22.

---

[1] Rectal bleeding can be caused by severe medical conditions, including colorectal cancer. *Rectal Bleeding*, CLEVELAND CLINIC (Oct. 19, 2024). This Court may take judicial notice of that fact. *United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018) ("We may take judicial notice of facts outside the record where the fact may not be reasonably disputed and is 'relevant and critical to the matter on appeal.'" (quoting *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989))); *Cecil v. Reliance Standard Life Ins. Co.*, No. 7:05-CV-00003, 2005 WL 2291225, at *7 (W.D. Va. Sept. 19, 2005) ("Well-known medical facts are the types of matters of which judicial notice may be taken." (quoting *Hines ex rel. Sevier v. Sec'y of Dep't of Health & Hum. Servs.*, 940 F.2d 1518, 1526 (Fed. Cir. 1991))).

[2] "Heavy rectal bleeding accompanied by severe abdominal pain" requires "immediate medical attention." *Rectal Bleeding–Symptoms*, Mayo Clinic

Without medical intervention, Mr. Spivey continued to experience profuse rectal bleeding and extreme stomach pain throughout his stay at USP Lee. J.A. 23. Only after Mr. Spivey transferred to a new facility was he finally afforded medical care for his condition. J.A. 22. At the time he filed his complaint, Mr. Spivey continued to suffer emotional and mental distress due to the denial of care at USP Lee. J.A. 23.

### C.    Defendants Pease and Breckon Denied Mr. Spivey Medical Care For His Serious Dental Conditions.

During his time at USP Lee, Mr. Spivey also suffered from tooth decay and pulpitis.[3]  J.A. 20. Both conditions caused him extreme pain, for which ibuprofen proved inadequate. J.A. 21. Mr. Spivey notified Defendants Karen Pease, a nurse, and Michael Breckon, the warden, that he needed urgent dental care because of the pain and inflammation he was experiencing. J.A. 21. But they denied him care, instead placing him on a waitlist. J.A. 21.

Without necessary dental attention, Mr. Spivey's tooth broke, exacerbating his pain. J.A. 21. Still prevented from seeing a dentist, Mr.

---

(Nov. 5, 2024), http://www.mayoclinic.org/symptoms/rectal-bleeding/basics/when-to-see-doctor/sym-20050740#:~:text=Seek%20immediate%20medical%20attention,severe%20abdominal%20pain%20or%20cramping).

[3] Tooth pulpitis is a bacterial infection where the inner tissue of a tooth that contains nerves and blood vessels becomes inflamed. *See Pulpitis*, CLEVELAND CLINIC (Oct. 19, 2024), https://my.clevelandclinic.org/health/diseases/23536-pulpitis.

Spivey was forced to "dig out the root" of his tooth and remove the remaining parts of the tooth with his own hands. J.A. 82. Defendants continued to deny him dental care for the remainder of his stay at USP Lee. J.A. 21–22. Only after he transferred to a new facility was he able to see a dentist. J.A. 22. At the time he filed his complaint, Mr. Spivey continued to experience emotional and mental distress due to the denial of care at USP Lee. J.A. 22.

### D. Defendants Cunic, Babnew, and Bailey Denied Mr. Spivey Mental Health Treatment For His Severe and Recurrent Depressive Disorder.

Mr. Spivey has a documented history of severe and recurrent depressive disorder. J.A 23. While at USP Lee, he requested mental health care. J.A. 23. Defendant Tanya Cunic, a psychologist, denied Mr. Spivey's request. J.A. 23. Mr. Spivey also requested mental health care from Babnew and Bailey, who also denied his requests. J.A. 23. As a result, he did not receive any care for his severe depression during his time at USP Lee. J.A. 23. At the time he filed his complaint, Mr. Spivey was still suffering emotional and mental distress due to this denial of mental health care. J.A. 23.

### E. Defendant Moore Repeatedly Assaulted Mr. Spivey During Pat-Down Searches.

Defendant Mark Moore, a BOP agent, assaulted Mr. Spivey during a series of pat-down searches conducted while Mr. Spivey was leaving the chow hall. J.A. 23–24, J.A. 94. Without penological justification, Moore

8

"offensive[ly]" "slid his knuckle down [Mr. Spivey's] buttock" in an effort to "humiliate[e]" and "harass[]" Mr. Spivey. J.A. 24. At the time he filed his complaint, Mr. Spivey continued to suffer emotional and mental distress as a result of these incidents. J.A. 24.

### F.    Officials Prevented Mr. Spivey From Accessing Administrative Remedies.

Mr. Spivey tried to seek remedies through the Bureau of Prison's administrative remedy process for officers' use of force and denial of medical care. J.A. 24. But officials stymied his efforts, "either refusing to file his administrative remedy requests" or "claiming to have 'lost' his administrative remedy request forms." J.A. 24. One of the administrators thwarting his efforts was the wife of Bowles, who directed the assault on Mr. Spivey while he was in restraints. J.A. 24.

## II.    Procedural History

Mr. Spivey filed this civil action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) against Defendants, all of whom are BOP staff members. *See* J.A. 15. As relevant here, he alleged that Defendants Bowles, Cantrell, Mullins, Moore, Phelps, and Smith violated his rights under the Eighth Amendment—or, in the alternative, the Fourth Amendment—by using excessive force. J.A. 25–27, J.A. 32–33. He also alleged that Defendants Babnew, Bailey, Breckon, Cunic, Kirby, McIntyre, and Pease violated his

9

Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs. J.A. 29–32.

Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment, alleging that *Bivens* did not confer a cause of action over Mr. Spivey's claims.[4] J.A. 38–45. In opposing that motion, Mr. Spivey explained that Supreme Court and Fourth Circuit caselaw have repeatedly affirmed the availability of *Bivens* remedies for Eighth Amendment medical care claims such as his. J.A. 86–88. Mr. Spivey also argued that a *Bivens* cause of action should be available for all of his claims because there are no special factors counseling against the extension of *Bivens* in his case. J.A. 86, J.A. 92–98.[5]

The district court granted Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). J.A. 162. In so doing, the district court suggested that, contrary to binding precedent, a *Bivens* remedy is no longer available for Eighth Amendment medical care claims whenever they diverge—even in minor ways—from past *Bivens* cases.

---

[4] Defendants also argued that one of Mr. Spivey's excessive force claims was barred by the statute of limitations and that Defendants were entitled to qualified immunity on all of Mr. Spivey's claims. J.A. 34–35.
[5] Mr. Spivey also argued that the statute of limitations did not bar his excessive force claims from proceeding and that Defendants were not entitled to qualified immunity on any of his claims. J.A. 98–113. Because the district court did not address these issues, J.A. 139–161, this Court should not address them for the first time on appeal.

J.A. 149–53. Moreover, ruling without the benefit of this Court's recent decision in *Fields v. Federal Bureau of Prisons*, 109 F.4th 264, 269 (4th Cir. 2024), the district court held contrary to that opinion that factors like the existence of administrative remedies and the Prison Litigation Reform Act ("PLRA") counsel against extending a *Bivens* cause of action to Mr. Spivey's claims. J.A. 157.

Mr. Spivey timely appealed.

## SUMMARY OF ARGUMENT

Mr. Spivey stated a *Bivens* cause of action for his Eighth Amendment medical care claims. The Supreme Court has repeatedly reaffirmed that a *Bivens* remedy is available for Eighth Amendment medical claims pursuant to *Carlson v. Green*—a fact this Court has consistently acknowledged for decades. Mr. Spivey's medical care claims fall squarely under that precedent, and the district court's contrary conclusion was based on fundamental errors. First, the district court failed to construe Mr. Spivey's factual allegations in the light most favorable to him, erroneously finding his claims unserious and distinguishable from *Carlson* on that ground. Second, the district court held that inconsequential differences between the type and seriousness of the conditions Mr. Spivey suffered, and the fact that they were not

11

fatal, render his claims meaningfully different from those in *Carlson*—a conclusion that flies in the face of this Court's precedent and persuasive decisions issued by sister circuits. *See, e.g.*, *Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016); *Hicks v. Ferreyra*, 64 F.4th 156, 166 (4th Cir. 2023); *Watanabe v. Derr*, 115 F.4th 1034, 1036–37 (9th Cir. 2024). Finally, the district court held that the availability of alternative remedies differentiates Mr. Spivey's claims from those in *Carlson*. But Defendants egregiously prevented Mr. Spivey from pursuing administrative remedies, rendering such remedies unavailable. And once he transferred facilities, he was unable to pursue injunctive relief. Moreover, even if he had alternative remedies available to him, that fact would be irrelevant; binding precedent makes clear that alternative remedies do not bear on whether a *Bivens* cause of action is available pursuant to *Carlson*.

This Court should also extend a *Bivens* remedy to Mr. Spivey's excessive force claims—and to his medical care claims, were this Court to find that the latter do not fall under *Carlson*. After the district court issued its decision, this Court held in *Fields v. Federal Bureau of Prisons* that *Bivens* extends to claims that, like Mr. Spivey's, do not implicate the

12

separation of powers, and for which administrative remedies have been made unavailable by prison officials. Neither Mr. Spivey's excessive force claims nor his medical care claims implicate the separation of powers, and officials thwarted his efforts to pursue administrative remedies on both sets of claims.

For these reasons, this Court should reverse the district court.

## STANDARD OF REVIEW

This Court reviews de novo a district court's order granting a motion to dismiss for failure to state a claim. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). To survive a motion to dismiss, a complaint must only "present factual allegations that 'state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In applying that standard, the court must take all facts plead as true, and draw all reasonable inferences in favor of the non-moving party. *Id.*

## ARGUMENT

I.    **Mr. Spivey Has a Cognizable *Bivens* Action for his Eighth Amendment Medical Care Claims Under *Abbasi*'s First Step.**

13

**A.    The Supreme Court and this Court have Repeatedly Affirmed the Availability of *Bivens* Causes of Action in Existing Contexts Under *Abbasi*'s First Step.**

The Supreme Court has long recognized a damages action against federal officials for a select set of constitutional claims. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Court first found a damages action to exist against federal officials in violation of the Fourth Amendment's search and seizure provisions. *See* 403 U.S. 388 (1971). In the decade after, the Court acknowledged causes of action for Fifth Amendment sex-discrimination claims, *see Davis v. Passman*, 442 U.S. 228 (1979), and—most relevant here—Eighth Amendment medical care claims brought against federal prison officials, *see Carlson v. Green*, 446 U.S. 14 (1980). While the Court has since declined to extend *Bivens* remedies to new kinds of claims, it has repeatedly emphasized that *Bivens* remedies remain in these three previously recognized contexts. *See Egbert v. Boule*, 596 U.S. 482, 490–491 (2022); *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020); *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

The two-part test announced in *Abbasi* ossifies this regime. *See* 582 U.S. at 135–36. Under step one, a court must find a *Bivens* cause of action available as long as the case does not present a "new" context. *Id.* at 139.

14

A context is new only if it is "different in a meaningful way from previous *Bivens* cases decided by th[e] Court." *Id.* at 139. If the context is not new—in other words, if it is one of the three "contexts" recognized in *Bivens*, *Davis*, or *Carlson*—then the inquiry is over and a *Bivens* cause of action exists. Under step two—which a court reaches only if a context is "new" under step one—the court should find a cause of action available if there are no "special factors" counselling against extending *Bivens* to the new context. *Id.* at 136 (internal quotations omitted).

A *Bivens* cause of action is available for Mr. Spivey's medical care claims under step one, as his claims are materially indistinct from those in *Carlson v. Green. See* 446 U.S. 14. There, a prisoner's family sued federal officials for deliberate indifference to his serious medical needs after officials provided delayed and grossly inadequate care for his chronic asthma. *Id.* at 16 n.1. Here, Mr. Spivey sues federal officials for deliberate indifference to his serious medical needs after federal prison officials provided him delayed or wholly inadequate care, and his conditions worsened as a result. J.A. 15–16, J.A. 21–23. So Mr. Spivey makes out textbook *Carlson* claims.

15

In fact, Mr. Spivey's case does not diverge from *Carlson* in any of the ways that the Court has found relevant to step one. *See Abbasi*, 582 U.S. at 139–40. According to the Court, factors that might bear on the newness of a claim under step one includes:

> [T]he rank of officers involved; constitutional right at issue; generality or specificity of the official action; extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; statutory or other legal mandate under which the officer was operating; risk of disruptive intrusion by the judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Id.* None of these separate Mr. Spivey's case from *Carlson*.

First, Mr. Spivey filed suit against officers of the same rank as those in *Carlson*: treating physicians and medical staff, specific prison facility officials, and BOP administration and leadership. *Cf.* J.A. 139–143 *with Carlson*, 446 U.S. 14. Second, Mr. Spivey's allegations involve the same "constitutional right at issue" in *Carlson*: deliberate indifference to serious medical needs in violation of the Eighth Amendment. *Abbasi*, 582 U.S. at 140. Moreover, the "extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted" was clear in *Carlson* and even more extensive in Mr. Spivey's case. *Abbasi*, 582 U.S. at 140. *See, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976); *DeShaney v.*

16

*Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 198 n.5 (1989); *Erickson v. Pardus*, 551 U.S. 89, 90 (2007). And "the statutory or other legal mandate under which the officer was operating" is also the same in both *Carlson* and the present case, as both implicate the constitutional duty to provide adequate medical care under the Eighth Amendment. *Abbasi*, 582 U.S. at 139–40. Furthermore, like *Carlson*, this case does not present "risk of disruptive intrusion by the Judiciary into the functioning of other branches," *id.*, because rather than targeting high-level policy or systemic prison customs, which posed a problem for the plaintiff in *Abbasi*, 582 U.S. at 140, Mr. Spivey's claims target discrete acts or omissions on the part of line-level federal officials in response to acute medical conditions suffered. Finally, there are no "potential special factors that previous *Bivens* cases did not consider," as this case is materially indistinguishable from *Carlson*.[6] *Abbasi*, 582 U.S. at 140. So, the considerations the Court has identified as relevant to step one all show that Mr. Spivey's claims are not meaningfully different from those in *Carlson*. *Id.* at 139.

---

[6] For the reasons explained *infra* at 31–34, the availability of administrative remedies is not the kind of special factor relevant at step one.

17

This Court came to a similar conclusion in *Hicks v. Ferreyra*, where it held that a Fourth Amendment search claim was not meaningfully different from the claim in *Bivens* itself because none of the factors just identified were present—though there were a number of other factual discrepancies between the two cases. *See* 64 F.4th 156, 166–68 (4th Cir. 2023), *cert denied by* 144 S. Ct. 555 (2024). As this Court explained, it did not matter that *Hicks* involved a traffic stop rather than the search of someone's home, an arrest, and the use excessive force, which occurred in *Bivens*. *Id.* at 166. Rather, what mattered is that *Hicks* and *Bivens* called for the same constitutional analysis, and the "actions [in *Hicks*] and in *Bivens* were taken in purported execution of principles . . . well-informed by decades of judicial guidance." *Id.* at 167. It was also relevant that *Hicks*, like *Bivens*, involved "discrete actions" made by officials rather than "large-scale policy decisions or other general directives or statutes." *Id.* at 167 (internal quotations omitted). Because of these similarities, this Court found that the claim in *Hicks* was not new under step one of the *Abbasi* inquiry.[7] Tellingly, the Supreme Court denied cert.

---

[7] *Hicks* is not an anomaly. *See Snowden v. Henning*, 72 F.4th 237, 247 (7th Cir. 2023) (holding no new context when claims "stem from run-of-

18

*See* 144 S. Ct. 555. *Hicks* thus makes clear that *Bivens* actions remain available in previously recognized contexts absent the kind of meaningful divergences the Court has identified.

### B. The District Court Committed a Series of Errors in Holding that Mr. Spivey's Medical Care Claims Are Meaningfully Different From Those in *Carlson*.

The district court acknowledged that, "in light of *Carlson*," the availability of a *Bivens* cause of action for Mr. Spivey's medical care claims "present[s] a close[] question." J.A. 153. But the court concluded that Mr. Spivey's claims meaningfully differ from *Carlson* and therefore present a new context. In support of this conclusion, the district court first suggested that the kinds of medical conditions and lack of treatment suffered by Mr. Spivey were distinguishable from those in *Carlson*. J.A. 153–57. Second, the court found that the availability of administrative remedies in Mr. Spivey's case rendered his case meaningfully different from *Carlson*. Both conclusions were wrong.

---

the-mill allegations of excessive force during an arrest," even where the facts diverge from *Bivens* because the alleged violations occurred in a hotel at the hands of a single officer with a warrant, whereas *Bivens* involved the search of a home by six officers who did not have a warrant); *see also Edwards v. Gizzi*, 107 F.4th 81, 88 (2d Cir. 2024) (Park, J., concurring) (expressing support for *Hicks*).

19

### i. The District Court Erred in Concluding that Mr. Spivey's Medical Conditions and Lack of Treatment Render his Claims Meaningfully Different from Those in *Carlson.*

The district court court's conclusion that Mr. Spivey's medical conditions and treatment differ meaningfully from *Carlson* derives from two fundamental errors.

First, the court is required at the motion-to-dismiss stage to construe the complaint in the most favorable light to the non-moving party while accepting all well-pleaded facts as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court did not do so, concluding that Mr. Spivey's medical conditions and lack of treatment were not as serious as those in *Carlson* despite Mr. Spivey's allegations to the contrary. J.A. 154. Specifically, Mr. Spivey's briefing below described profuse bleeding out of his rectum accompanied by extreme stomach pain; agonizing dental symptoms including a broken tooth Mr. Spivey had to pull out on his own because he was not provided timely dental care; "recurrent and severe" major depressive disorder for which he requested and was denied mental health care; and injuries to his neck, back, legs, and feet caused by unprovoked and excessive force. J.A. 19–23. These are each painful

20

and dangerous conditions in their own right, and all the more so in conjunction.

But instead of acknowledging the gravity of Mr. Spivey's symptoms, *see Ashcroft*, 556 U.S. at 678, the district court downplayed them and concluded that they were insufficiently serious to fall under *Carlson*, *see* J.A. 144. In so doing, the district court ignored the extreme pain that Mr. Spivey endured as a result of his conditions. J.A. 153–55. It also emphasized that Mr. Spivey did not allege a serious "diagnos[is]" for his stomach pain and profuse rectal bleeding, J.A. 154, without inferring, as it was required to do, the possible emergent conditions that could cause the symptoms he described.[8] And the court did not acknowledge in its legal analysis the scope of his dental issues—including his broken teeth— or the effects of his delayed dental care—including his having to pull out his own tooth. J.A. 153–55. Finally, it failed to mention Mr. Spivey's severe and recurrent depression, referring only cursorily to the "mental health treatment" he desired. J.A. 154. After finding Mr. Spivey's conditions unserious, the district court concluded that his case was distinguishable from *Carlson*. J.A. 154. But dismissal based on facts not

---

[8] *See supra* at note 1.

21

construed in Mr. Spivey's favor is an error meriting reversal at this stage of the litigation. *See Ashcroft*, 56 U.S. at 678.

Moreover, the kind and seriousness of one's medical conditions is not a meaningful difference under step one, and the district court committed a second error in holding otherwise. J.A. 153–57. Indeed, it pointed to a series of picayune differences between Mr. Spivey's case and *Carlson*,[9] including that *Carlson* involved medical treatment for severe asthma, *see* 446 U.S. 14, whereas Mr. Spivey sought medical care for rectal bleeding and stomach pain, dental conditions, mental illness, and back and leg injuries, J.A. 154. Furthermore, the court said, it was significant that the denial of care in Mr. Spivey's case was not fatal, unlike that in *Carlson*. J.A. 154.

But this Court has already rejected the notion that a claim must be a perfect factual match to survive step one. As explained *supra* at 18, this Court in *Hicks* found that a Fourth Amendment claim was not meaningfully different from the claim in *Bivens* itself even though the cases were not factually identical. 64 F.4th at 166–68. Recall that in

---

[9] The district court also noted that in *Carlson*, the prisoner was given contraindicated drugs and an inoperative respirator, and was kept in a "grossly inadequate medical facility." J.A. 154.

22

*Hicks*, officers conducted an "unlawful and prolonged" seizure during a traffic stop. *Id.* In *Bivens*, by contrast, federal agents conducted a warrantless entry and search of the plaintiff's apartment before arresting him and taking him to a courthouse, where he was "interrogated, booked, and subjected to a visual strip search." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). Nevertheless, this Court held that the claim in *Hicks* did not differ meaningfully from *Bivens* for the purpose of step one. *Hicks*, 64 F.4th at 166–68 (internal quotation marks omitted).[10] If *Hicks* wasn't sufficiently different from *Bivens* to render it a new context, then this case isn't sufficiently different from *Carlson*.

Moreover, this Court has repeatedly allowed *Bivens* actions to proceed on medical care claims that do not involve severe asthma and are not fatal. For example, in *Scinto v. Stansberry*, a plaintiff alleged that prison officials failed to provide him with insulin for his diabetes and denied aid despite gastrointestinal symptoms. 841 F.3d 219, 228–32 (4th Cir. 2016). Although the plaintiff did not have asthma and his denial of

---

[10] As noted *supra* at note 7, the Fourth Circuit is not alone in concluding that trivial differences do not render a claim meaningfully different under step one.

23

care was not fatal, this Court allowed both his claims to proceed under *Bivens*.[11] *Id.* at 237. And in *Masias v. Hodges*, No. 21-6591, 2023 WL 2610230 at \*1 (4th Cir. Mar. 23, 2023) (unpublished), this Court found a *Bivens* cause of action available for Eighth Amendment medical care claims related to a nasal infection, hernia, ankle injury, and toenail issues. *See* No. 21-6591, 2023 WL 2610230 at \*1 (4th Cir. Mar. 23, 2023) (unpublished). In coming to this conclusion, this Court rejected the district court's reasoning that such claims were meaningfully different from those in *Carlson*. *Id.*; *see also Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023) (assessing the merits of a *Bivens* claim alleging deliberate indifference to plaintiff's small bowel obstruction and abdominal infection); *King v. United States*, 536 Fed. App'x 358, 359 n.1 (4th Cir. 2013) (same, for claims involving inadequate dental care[12]); *Lewis v.*

---

[11] Although *Scinto* does not include an explicit step one analysis, this Court could not have addressed the merits of the substantive Eighth Amendment claim at issue in *Scinto* had there been no *Bivens* cause of action. This is because whether a *Bivens* cause of action exists is "'antecedent' to the other questions presented." *Hernandez v. Mesa*, 589 U.S. 548, 553 (2017).

[12] Though the plaintiff in *King* filed a complaint under 42 U.S.C. § 1983, this Court "construe[d] his allegations as asserting *Bivens* claims," which the Court found available to him pursuant to *Carlson*. 536 Fed. App'x at 359 n.1.

24

*Shah,* 466 Fed. App'x 211 (4th Cir. 2012) (same, for claim against prison medical personnel's treatment choices of his scrotal cysts).[13]

Other circuits have similarly found *Bivens* causes of action available under *Carlson* for a wide array of Eighth Amendment medical care claims. For example, in *Stanard v. Dy*, 88 F.4th 811, 818 (9th Cir. 2023), the Ninth Circuit held that a plaintiff's Eighth Amendment claim alleging deliberate indifference to his request for Hepatitis treatment was not meaningfully different from the claim in *Carlson* and could thus proceed under step one. In so holding, the court noted that, "even assuming [the plaintiff] received less deficient care than the inmate in *Carlson*, that difference in degree is not a meaningful difference giving rise to a new context." *Id.* at 817; *see also Watanabe v. Derr*, 115 F.4th 1034, 1041–42 (9th Cir. 2024) (holding that the plaintiff's claim was "functionally identical to the nature of the claim in *Carlson*" where plaintiff sustained bone fractures and severe back pain as a result of a prison fight); *Chambers v. Herrera,* 78 F.4th 1100, 1103 (9th Cir. 2023) (recognizing that a *Bivens* claim may be viable where prison officials

---

[13] As in *Scinto*, this Court could not have reached the merits in *Langford, King*, or *Lewis* had there been no available *Bivens* cause of action. *See supra* at note 11 (citing *Hernandez*, 589 U.S. at 553)).

refused to x-ray a prisoner's broken arm for six weeks); *Hurst v. Derr,* No. 23-15523, 2024 WL 3842097 at \*1 (9th Cir. Aug. 16, 2024) (allowing a *Bivens* cause of action to proceed on a claim involving severe head pain because "a prisoner's medical condition need not be chronic, fatal, or life-threatening for a claim to be cognizable under *Bivens* and *Carlson*"). In short, the Ninth Circuit has held that the "nature" of the claim as well as the "severity" of the claim—including the medical issue itself and the consequences of failing to adequately treat it—do not make the claim meaningfully different from *Carlson*. *See Watanabe*, 115 F.4th at 1040–42.

Similarly, in *Carlucci v. Chapa*, 884 F.3d 534, 538–39 (5th Cir. 2018), the Fifth Circuit held that a plaintiff had a *Bivens* cause of action against federal officials' denial of care for cracked and breaking teeth. *See also Vaughn v. Bassett*, No. 22-10962, 2024 WL 2891897 at \*1–3 (5th Cir. June 10, 2024) (unpublished) (holding that delayed care for multiple facial fractures could proceed under *Abbasi*'s first step). In *Cross v. Buschman,* No. 22-3194, 2024 WL 3292756 at \*1–2 (3d Cir. July 3, 2024) (unpublished), the Third Circuit vacated a lower court's holding that no *Bivens* remedy was available under *Carlson* where the plaintiff sued a

26

prison doctor who had failed to treat his diabetes in violation of the Eighth Amendment. And the Seventh and Eighth Circuits have allowed *Bivens* actions to proceed on claims involving, respectively, the failure to treat an eye condition, *see Ortiz v. Webster*, 655 F.3d 731, 734–35 (7th Cir. 2011), and delayed jaw surgery, *see Wise v. Lappin*, 674 F.3d 939, 940–42 (8th Cir. 2012).

The district court did not engage at all with these cases, instead suggesting vaguely that "the Supreme Court's most recent *Bivens* guidance" renders Mr. Spivey's claims a new context. J.A. 153. Not so. While the Supreme Court has in the past decade declined to extend *Bivens* to new contexts under *Abbasi*'s *second* step, it has *reaffirmed* time and again that *Bivens* damages remain available under the first step in long-recognized contexts, including for Eighth Amendment medical care claims. *See Egbert*, 596 U.S. at 490–92 (explaining that "[f]irst, we ask whether the case . . . [is] meaningfully different from the three cases in which the Court has implied a damages action," including *Carlson* (cleaned up)); *Hernandez*, 589 U.S. at 102 (similar); *Ziglar*, 582 U.S. at 147 (similar)); *see also Fields v. Federal Bureau of Prisons*, 109 F.4th at 269 (noting that the *Egbert* Court "chose not to dispense with *Bivens*

27

altogether"). Moreover, the Court has recently emphasized that only certain kinds of differences render a context new under step one, while others, "of course, will be so trivial that they will not suffice to create a new *Bivens* context." *Ziglar*, 582 U.S. at 149. For this Court to hold now that a new context is created by virtue of *any difference at all* is thus squarely at odds with Supreme Court precedent—a precedent that must govern until the Supreme Court itself holds otherwise. *See TFWS, Inc. v. Franchot,* 572 F.3d 186, 192 (4th Cir. 2009) ("[T]he Supreme Court has repeatedly instructed that only the Supreme Court itself may exercise the prerogative of determining whether any of its own prior holdings have been overturned."); *Hohn v. United States*, 524 U.S. 236, 252–53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing viability.").

In fact, this Court and its sister circuits have already acknowledged that *Egbert* does not change the step one analysis to require perfect factual matches. Indeed, a number of the cases discussed above—which find *Bivens* remedies available even where the facts diverged from past *Bivens* cases—were decided *after Egbert. See, e.g., Hicks*, 64 F.4th 166–

28

68; *Lewis,* 466 Fed. App'x 211; *Masias*, No. 21-591, 2023 WL 2610230 at *2–3; *Watanabe*, 115 F.4th at 1036–37; *Vaughn*, No. 22-10962, 2024 WL 2891897 at *1–3; *Cross,* No. 22-3194, 2024 WL 3292756 at *1–2 (unpublished).

And for its part, the district court does not cite a single persuasive case. *See* J.A. 154–55.[14] The only binding cases it mentions each involve claims that, unlike the claims at issue here, diverged substantially from past *Bivens* contexts in the very ways that the Supreme Court has said are relevant to step one. For example, in *Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023), this Court found that Fifth Amendment procedural due process and race-based discrimination claims brought against prison officials were new under step one, because 1) "[t]he Supreme Court has never authorized a *Bivens* claim" for these two causes of action, and 2)

---

[14] Many of the cases cited by the district court are themselves district court cases with limited persuasive value. *See* J.A. 154–55 (citing *Smith v. Sines*, No. 5:20-cv-00154, 2023 U.S. Dist. LEXIS 89382 (N.D.W. Va. Jan. 26, 2023); *Washington v. Fed. Bureau of Prisons*, No. 5:16-cv-3913, 2022 WL 3701577 (D.S.C. Aug. 26, 2022); *Sharp v. United States Marshals Serv.*, No. 5:20-cv-03282, 2022 WL 3573860 (E.D.N.C. July 15, 2022)). What's more, in affirming *Smith*, this Court went out of its way to mention that, "[n]otably, [the plaintiff] ha[d] not challenged the district court's conclusion regarding the availability of a *Bivens* remedy" and so had "forfeited appellate review of that issue." *Smith v. Sines*, No. 23-6110, 2024 WL 4164275 (4th Cir. 2024).

the plaintiff's claims were "brought against a 'new category of defendants.'"[15] Similarly, in *Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023), this Court declined to extend *Bivens* to a *failure-to-protect* claim, which the Court has also never previously recognized. And in *Tate v. Harmon*, 54 F.4th 839, 846 (4th Cir. 2022), this Court held that *Bivens* does not apply to "broad-based, systemic" conditions-of-confinement claims against "an array of federal officials," including prison leadership. *Mays, Bulger*, and *Tate* thus exemplify the kinds of differences that can create a new context under step one, including differences in the kind of constitutional violation alleged, and the kinds of defendants sued.[16] None of those differences are present here.

---

[15] The recognized Fifth Amendment-based *Bivens* claim in *Davis v. Passman*, 442 U.S. 228 (1979), had been brought against "a former Congressman," whereas in *Mays*, the claims were brought against prison officials. *See Mays*, 70 F.4th at 203.

[16] The same is true for *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019) (holding that the statutory scheme governing the case made it meaningfully different from *Bivens*); *Quinones-Pimentel v. Cannon*, 85 F.4th 63, 71 (1st Cir. 2023) (holding that the case presented meaningful differences from *Bivens* where claims were brought against prosecutors and private corporate employees, rather than just line-level officers, and involved "fabricated evidence in support of warrants to search a business" and "seized physical evidence," rather than the search of a home, arrest, interrogation, and strip-search); and *Anderson v. Fuson*, No.23-5342, 2024 WL 1697766 at *3 (6th Cir. 2024) (holding that an Eighth

30

### ii. The District Court Also Erred in Holding That the Availability of Alternative Remedies Rendered Mr. Spivey's Claims New Under *Abbasi*'s First Step.

The district court wrongly determined that the availability of alternative remedies makes Mr. Spivey's medical care claims meaningfully different from *Carlson*. J.A. 155–56. That was wrong.

As a preliminary matter, Mr. Spivey did not actually have access to either of the alternative remedies—administrative remedies or injunctive relief—identified by the district court. That is because prison staff prevented Mr. Spivey from accessing any administrative remedies. J.A. 24. This Court has held that such action on the part of officials renders the remedy unavailable. *See Fields*, 109 F.4th at 276. And Mr. Spivey could not have requested injunctive relief, *see* J.A. 33, as any injunctive claims related to Mr. Spivey's medical treatment at USP Lee would have become moot as soon as he transferred facilities and was provided care. *See Hodges v. Meletis*, 109 F.4th 252, 256 n.5 (4th Cir. 2024). A damages action was all he had.[17]

---

Amendment *excessive force claim* presented a new context, with only cursory reference to *Carlson*).

[17] Even if Mr. Spivey could have accessed the BOP's administrative remedy process, or pursued injunctive claims, neither would have provided money damages and are therefore inadequate alternatives to

But, even if alternative remedies had been available to Mr. Spivey, that would not render his claims different from those in *Carlson*. After all, the plaintiff in *Carlson* had available to him an alternative remedial scheme in the form of an FTCA suit. *See Carlson*, 446 U.S. at 23. So the existence of alternative remedies would not make Mr. Spivey's case meaningfully different from *Carlson* for the purpose of step one.

Moreover, alternative remedies have no bearing on the step one analysis. As *Egbert* demonstrates, courts are meant to consider the availability of alternative remedies at the *second* step of the analysis, not the first step. *See Egbert v. Boule*, 596 U.S. 482, 493–94 (2022) (explaining that the availability of alternative remedies bears on whether "to infer a *new Bivens* cause of action" (internal quotations omitted) (emphasis added)); *Hurst v. Derr*, 2024 WL 3842097, at *2 (9th Cir. Aug.

---

*Bivens*. What's more, the BOP process is not an alternative to *Bivens* because it is an executive-made administrative process rather than a congressionally-enacted statutory scheme, and only the later displaces *Bivens*. *See Abbasi*, 582 U.S. at 137 (explaining that the question is whether "*Congress* has created" an alternative process (emphasis added)); *McCarthy v. Madigan*, 503 U.S. 140, 151 (1992), *superseded in part on other grounds by statute*, Prison Litigation Reform Act of 1995, 110 Stat. 1321–71 ("Congress did not create the remedial scheme at issue here [the BOP process]," and thus the BOP process is not the sort of "equally effective alternative remedy" that can be "a substitute for recovery under the Constitution.").

16, 2024) (quoting *Egbert*, 598 U.S. at 498) ("*Egbert* clarified that the existence of alternative remedies is a 'special factor' which should be considered at the second step of the *Bivens* analysis."). That is, the existence of alternative remedies is relevant to whether there is reason not to *extend Bivens* to new contexts, but it is not the kind of factor that makes a context new.

Indeed, this Court has found *Bivens* causes of action available under step one even where there were alternative remedial schemes. For example, the plaintiff in *Scinto* made clear in his complaint that there was an "administrative remedy procedure" through which he tried to resolve his medical care claims. *Memorandum in Support re Complaint* at 41, *Scinto v. Federal Bureau of Prisons, et al.*, No. 5:10-ct-03165-D, 2011 WL 6780803 (E.D.N.C. Dec. 27, 2011). But this Court allowed the *Bivens* action to proceed anyway. *See Scinto*, 841 F.3d at 228–32. Similarly, the plaintiff in *Masias* alleged that there were administrative remedies available to him, *see Informal Opening Brief* at 2, in *Masias*, No. 21-6591, 2023 WL 2610230 (unpublished), but this Court allowed a *Bivens* cause of action to proceed nonetheless, *see Masias*, No. 21-6591, 2023 WL 2610230 at *2 (unpublished).

33

Several of this Court's sister circuits have done the same. In *Stanard v. Dy*, the Ninth Circuit found that a *Bivens* action does "not present a new context from *Carlson* even where the prisoner ha[s] repeatedly grieved his denial of medical care using the BOP's internal complaint system." *Hurst*, 2024 WL 3842097, at *2 (citing *Stanard*, 88 F.4th at 818); *see also id.* (holding "alternative remedial structures" did not give rise to a new *Bivens* context under the first step). And in *Vaughn v. Bassett*, the Fifth Circuit allowed a cause of action to proceed under *Bivens* even while recognizing the plaintiff exhausted his administrative remedies. *See* No. 22-10962, 2024 WL 2891897, at *5 (5th Cir. June 10, 2024) (per curiam).

So, the district court erred in holding Mr. Spivey's claims new at step one based only on trivial differences between his claims and *Carlson*—differences which this Court and others have consistently rejected.

* * *

The caselaw mandating that Mr. Spivey's case proceed under *Abbasi*'s first step makes good sense. First, it honors congressional intent. Since *Carlson* was decided, Congress has declined to weigh in on

34

the availability of damages actions against federal officials, even while creating a legislative cause of action against prison officials in other contexts under the Prison Litigation Reform Act ("PLRA"). *See Fields*, 109 F.4th at 275. "[H]ad Congress intended to bar all *Bivens* claims brought by federal inmates," or to limit the scope of *Carlson* claims, "it could easily have done so by statutorily overruling [or limiting] *Carlson*." *Id.* Its decision to leave *Carlson* untouched therefore "speaks volumes." *Id.* (internal quotations omitted); *see Flood v. Kuhn*, 407 U.S. 258, 283–84 (1972) ("We continue to be loath . . . to overturn those cases judicially when Congress, by its positive inaction, has allowed those decisions to stand for so long and, far beyond mere inference and implication, has clearly evinced a desire not to disapprove them legislatively.").

Moreover, denying remedies for claims like Mr. Spivey's would be profoundly unjust. *Bivens* is often the only cause of action available to federal prisoners whose Eighth Amendment rights have been violated through officials' deliberate indifference to serious medical needs. Withholding a cause of action in these cases whenever they do not involve fatal asthma claims or where there exist alternative remedies would preclude relief for almost all federal prisoners whose rights have been so

violated. *Cf. Carlson*, 446 U.S. at 22 (noting that punitive damages "are especially appropriate to redress the violation by a Government official of a citizen's constitutional rights").

The district court therefore erred in holding that there was no cause of action for Mr. Spivey's medical care claims. This Court should reverse.

## II.    Mr. Spivey Has A Cognizable *Bivens* Cause of Action for His Claims Under *Abbasi*'s Second Step Pursuant to this Court's Recent Decision in *Fields v. Federal Bureau of Prisons.*

As mentioned above, when a claim is new under *Abbasi*'s first step, courts move to a second step, where they consider whether any "special factors counsel hesitation" about extending *Bivens*. *Abbasi*, 582 U.S. at 136. Here, the inquiry focuses on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at 136. If there is not "any reason to think that Congress might be better equipped [than the courts] to create a damages remedy" for the conduct at issue, the court extends *Bivens* to the new context. *Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 270 (4th Cir. 2024) (quotations omitted).

36

Heeding the Supreme Court's instruction, this Court has extended *Bivens* to new contexts only sparingly. It has declined to extend *Bivens* in cases that implicate the separation of powers, including where there is "potential for systemwide consequences that may result from extending *Bivens*." *Id.* at 271 (citing *Mays*, 70 F.4th at 200; *Bulger*, 62 F.4th at 133, 138; and *Tate*, 54 F.4th at 846). And this Court has acknowledged that *Bivens* may not be extended where "an alternative remedial structure" has been provided by Congress, as such a structure may indicate that Congress is better suited than the Judiciary to remedy the violation at issue. *Id.*

But this Court has also recognized that, where separation of powers concerns are *not* present, *Bivens* remedies are available. *See id.* Indeed, earlier this year, after the district court dismissed Mr. Spivey's claims, this Court clarified in *Fields* that *Bivens* extends to new claims much like Mr. Spivey's. 109 F.4th at 271–76. In *Fields*, officers used excessive force "with no imaginable penological benefit," and then "rogue" officers denied administrative remedies to the plaintiff. 109 F.4th at 272. Because the case involved individual officers acting beyond the scope of their penological authority rather than system-wide policy, judicial

37

intervention did not encroach on executive or congressional power. *See id.* And since the plaintiff was unable to access alternative remedies, a judicial cause of action did not undermine remedies established by another branch. *See id* at 274–75. As a result, this Court found in *Fields* that there was no reason counseling against the extension of *Bivens* to the plaintiff's case. *See id* at 276.

The same analysis applies with equal force to Mr. Spivey's excessive force claims. And although, as explained above, Mr. Spivey's medical care claims fall under *Carlson*, the reasoning in *Fields* would also apply to those claims were they analyzed under step two.

### A.    *Bivens* Extends to Mr. Spivey's Excessive Force Claims.

Like the plaintiff in *Fields*, Mr. Spivey was subjected to excessive force with no penological benefit by officers acting beyond the scope of their authority, and then denied administrative remedies. J.A. 15–19, J.A. 23–24. After his cellmate admitted to tearing up a towel or sheet, officers placed Mr. Spivey in restraints around his ankles, wrists, and sides, and required him to kneel while they repeatedly slammed his head into a wall, stomped on his toes, and ground a shield into his back, legs, ankles, and toes. J.A. 16–19. The officers then left Mr. Spivey, still

restrained, on his knees in a cell smelling of urine and feces, while they came in to repeatedly assault him. J.A. 16–19. There is no penological justification for this conduct. *See Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 102 (4th Cir. 2017) (noting that the use of force against someone who is restrained and compliant, and has not engaged in wrongdoing, serves no penological purpose).[18] And by engaging in purposeless force, the officers acted well beyond their mandate. *Cf. Fields*, 109 F.4th at 271. A judicial remedy for the officers' conduct is therefore not aimed at a system-wide policy. Rather, as in *Fields*, it would be "narrow and discrete." *Id.*

The same is true with respect to Mr. Spivey's allegations that Moore repeatedly "slid his knuckle down [Mr. Spivey's] buttock" during pat-down searches when Mr. Spivey left the "chow hall" area. J.A. 23–24. There was no penological justification for this behavior; indeed, sexual

---

[18] Federal regulations also specify that restraints may not be used as a method for punishing the inmate nor in a manner that causes unnecessary physical pain or extreme discomfort. *See* CODE OF FEDERAL REGULATIONS, USE OF FORCE AND APPLICATION OF RESTRAINTS ON INMATES, https://www.ecfr.gov/current/title-28/chapter-V/subchapter-C/part-552/subpart-C.

assault contravenes BOP policy.[19] Mr. Spivey's challenge to this conduct therefore does not implicate any systemic practice, just like in *Fields*.

What's more, like the plaintiff in *Fields*, officials prevented Mr. Spivey from accessing administrative remedies for the Defendants' use of excessive force. Mr. Spivey attempted to file administrative remedies regarding both the abuse he suffered while in restraints, as well as Moore's conduct during pat-down searches. J.A. 24. But officials—including the wife of the officer that oversaw the force used against him while restrained—either "refus[ed] to file his administrative remedy requests" or "claim[ed] to have 'lost' his administrative remedy request forms." J.A. 63, J.A. 144. These facts make this case near-identical to *Fields*.

The district court, which did not have the benefit of this Court's decision in *Fields*, identified "two reasons to pause" before extending *Bivens*, but both are negated by *Fields*. J.A. 157. First, the district court held that the availability of alternative remedies counseled against extending *Bivens*. *See* J.A. 147. But, as this Court explained in *Fields*,

---

[19] *Sexually Abusive Behavior Prevention and Intervention Program*, U.S. Dept. of Justice, at 1 https://www.bop.gov/policy/progstat/5324_012.pdf.

40

*Bivens* extends to new contexts when such remedies are made inaccessible by prison officials. *Fields*, 109 F.4th at 271.

Second, the district court noted that Congress decided not to enact legislation conferring a cause of action against federal officials while creating a cause of action against state officials under the PLRA. J.A. 159–160. But such was also the case in *Fields*. *See Fields*, 109 F.4th at 275. And there, this Court explained that while "the PLRA may counsel against extending *Bivens* in cases brought by inmates in federal prisons as a general matter," and it "certainly does not counsel against extending *Bivens*" in cases like the present one." *Id.*

Because no other factors weigh against a judicial remedy to Mr. Spivey's excessive force claims, his excessive force claims should proceed.

### B.   Mr. Spivey's Medical Care Claims Can Proceed Under *Carlson*; In the Alternative, a *Bivens* Remedy Extends to Them Per *Fields*.

Even if Mr. Spivey's medical care claims were new under step one (which, for the reasons explained above, they are not), *Bivens* should extend to them under step two. Like his excessive force claims, Mr. Spivey's medical care claims do not implicate system-wide policy. *Cf. Fields*, 109 F.4th at 271. Instead, he alleges that a handful of officials

41

exhibited deliberate indifference to his serious medical conditions in violation of prison policy. Specifically, Mr. Spivey informed Kirby of his rectal bleeding and extreme stomach pain, and Kirby denied Mr. Spivey access to a doctor and to treatment. J.A. 22–23. Mr. Spivey told Pease and Breckon about his severe dental issues, and they failed to provide Mr. Spivey the urgent care he needed. J.A. 21–22. And Mr. Spivey alerted Cunic, Babnew, and Baily of his severe and recurrent depression, but they declined to provide him with any mental health treatment. J.A. 23. Finally, McIntyre denied Mr. Spivey's request for medical attention for the severe pain caused by the excessive force that officers perpetrated against him. J.A. 20. In challenging these officials' deliberate indifference, Mr. Spivey does not challenge prison policy; instead, he contends that a small group of officials acted on their own in violation of their mandate to provide care. As in *Fields*, such a claim is "narrow and discrete." *Fields*, 109 F.4th at 271.

Moreover, like in *Fields*, Mr. Spivey tried to make use of the BOP's administrative remedy process for his medical claims, but officers thwarted his efforts. J.A. 24. In such a case, *Fields* counsels, administrative remedies do not provide reason to deny a *Bivens* cause of

42

action. *Fields*, 109 F.4th at 271. And for the same reason that the PLRA did not counsel against extending *Bivens* in *Fields*, it would not do so here. *See supra* at 41. In sum, even if Mr. Spivey's medical care claims could not proceed under *Carlson*, no other factors would weigh against extending *Bivens* to Mr. Spivey's medical claims under step two.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order dismissing Mr. Spivey's medical care and excessive force claims.

Date: November 19, 2024                Respectfully submitted,

                                       */s/ Wynne Muscatine Graham*

Samuel Weiss                           Devi M. Rao
D Dangaran                             Wynne Muscatine Graham
RIGHTS BEHIND BARS                     RODERICK & SOLANGE
1800 M St. NW                           MACARTHUR JUSTICE CENTER
Fnt. 1 #33821                          501 H Street NE, Suite 275
Washington, DC 20033                   Washington, DC 20002
202-455-4399                           202-869-3449
d@rightsbehindbars.org                 wynnemg@macarthurjustice.org

*Counsel for Plaintiff-Appellant*

43

## STATEMENT CONCERNING ORAL ARGUMENT

Plaintiff-Appellant Mandriez Spivey, through *pro bono* counsel, respectfully requests oral argument. *See* Fed. R. App. P. 34(a)(2); Local Rule 34. This case involves an important question related to the availability of federal damages actions pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) and *Carlson v. Green,* 446 U.S. 14 (1980). If this Court affirms the district court's decision, it would all but obliterate the opportunity for federal prisoners in this circuit to bring *Bivens* actions in federal court for Eighth Amendment violations involving deliberate indifference to serious medical needs. This case also bears on the availability of *Bivens* remedies in the excessive force context, which this Court just recently opined on in *Fields v. Fed. Bureau of Prisons,* 109 F.4th 264 (4th Cir. 2024); this Court should not curtail the holding in *Fields* so soon. A published decision from this Court is necessary, and the undersigned respectfully suggest that oral argument would assist this Court in its resolution of these important questions.

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7(B) because this brief contains 9,353 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: November 19, 2024                    */s/ Wynne Muscatine Graham*
                                            Wynne Muscatine Graham

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2024, I electronically filed the foregoing *Opening Brief of Plaintiff-Appellant* with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 19, 2024              */s/ Wynne Muscatine Graham*
                                       Wynne Muscatine Graham