No. 24-6490

MANDRIEZ SPIVEY,

*Appellant*,

v.

MICHAEL BRECKON, ET AL.,

*Appellees*.

Appeal from the United States District Court
for the Western District of Virginia
at Roanoke
*The Honorable Michael Urbanski, District Judge*

BRIEF OF THE DEFENDANTS-APPELLEES

Zachary T. Lee
Acting United States Attorney

Laura Day Taylor
Assistant United States Attorney
310 First Street
Roanoke, Virginia 24011
(540) 857-2250

*Attorneys for the Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..........................................................................iii

STATEMENT OF JURISDICTION.................................................................1

INTRODUCTION ......................................................................................1

ISSUES PRESENTED .................................................................................2

STATEMENT OF THE CASE........................................................................3

I.    Relevant BOP Policy..........................................................................3

II.   Spivey's Allegations. ..........................................................................5

      A.    Alleged Excessive Force...............................................................7

      B.    Alleged Denial of Adequate Dental, Medical and Mental Health
            Care.......................................................................................8

            1.   Alleged Denial of Care for Tooth Pain ....................................9

            2.   Alleged Denial of Medical Treatment for Abdominal and
                 Rectal Issues.....................................................................10

            3.   Alleged Denial of Mental Health Care....................................10

            4.   Alleged Denial of Medical Treatment for Leg Injuries.............11

      C.    Allegations about Exhaustion of Administrative Remedies.............11

III.  Procedural History...........................................................................12

SUMMARY OF ARGUMENT .....................................................................13

STANDARD OF REVIEW..........................................................................15

ARGUMENT ..................................................................................... 15

I.    THE DISTRICT COURT CORRECTLY DECLINED TO EXTEND
      A *BIVENS* REMEDY TO SPIVEY'S CLAIMS. .................................... 15

      A.    Spivey's Claims Fail Step One:  They Present A New Context ........ 19

            1.    Spivey's excessive force claims (Counts 1, 3, and 9) arise in a
                  new context. ......................................................................... 19

            2.    Spivey's medical, dental, and mental health care claims
                  (Counts 5, 6, 7, and 8) arise in a new context .......................... 20

      B.    Spivey's Claims Fail Step Two:  Special Factors Preclude
            Extending A *Bivens* Remedy Here .............................................. 32

            1.    Special factors preclude extending *Bivens* to Spivey's
                  excessive force claims ............................................................. 33

            2.    Special factors preclude extending *Bivens* to Spivey's
                  medical, dental, and mental health care claims .......................... 46

II.   IN THE ALTERNATIVE, MOST OF THE DEFENDANTS ARE
      ENTITLED TO QUALIFIED IMMUNITY .......................................... 47

      A.    Defendants Smith and Phelps are Entitled to Qualified
            Immunity ................................................................................. 50

      B.    Defendant Moore is Entitled to Qualified Immunity ...................... 51

      C.    Defendants McIntyre, Pease, Breckon, Kirby, Cunic, Bailey,
            and Babnew are Entitled to Qualified Immunity .......................... 52

CONCLUSION .................................................................................. 57

CERTIFICATE OF COMPLIANCE ...................................................... 58

# TABLE OF AUTHORITIES

## Cases

*Ajaj v. Fozzard*, No. 23-2219, 2024 WL 4002912 (7th Cir. 2024) (unpublished) ................................................................. 19

*Alsop v. Fed. Bureau of Prisons*, 2022 WL 16734497 (3d Cir. 2022) (unpublished) ................................................................ 20

*Anderson v. Fuson*, 2024 WL 1697766 (6th Cir. 2024) (unpublished) ............... 23

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...................................................... 48

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................... 15, 48, 50

*Ball v. Streeval*, 2023 WL 1930003 (W.D. Va. 2023) ..................................... 20

*Bell Atlantic Corp. v Twombly,* 550 U.S. at 555 (2007) ......................... 49

*Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) ....................................... 52

*Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) .................................................... passim

*Bowring v. Godwill*, 551 F.2d 44 (4th Cir. 1977) ........................................... 53

*Brooks v. Johnson*, 924 F.3d 104 (4th Cir. 2019) .......................................... 50

*Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023) .................................... passim

*Carlson v. Green*, 446 U.S. 14 (1980) ................................................... passim

*Carlucci v. Chapa*, 884 F.3d 534 (5th Cir. 2018) .......................................... 32

*Chambers v. Herrera*, 78 F.4th 1100 (9th Cir. 2023) ..................................... 20

*Clinkenbeard v. Auten*, 2024 WL 3026125 (7th Cir. 2024) (unpublished) ................................................................. 23

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ................... 16, 17, 35

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ................................................. 48

*Cross v. Buschman*, 2024 WL 3292756 (3d Cir. 2024) (unpublished) ............... 32

*Davis v. Passman*, 442 U.S. 228 (1979) ........................................................ 16

*Davis v. Williamson*, 208 F. Supp. 2d 631 (N.D.W. Va. 2002) ....................... 55

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ....................................... 51

*Earle v. Shreves*, 990 F.3d 774 (4th Cir. 2021) ...................................... 43, 44

*Egbert v. Boule*, 596 U.S. 482 (2022) ..................................................... passim

*Ellis v. Elder*, 2009 WL 275316 (W.D. Va. 2009) ........................................51

*Estelle v. Gamble*, 429 U.S. 97 (1976) ........................................................53

*Farmer v. Brennan*, 511 U.S. 825 (1994) ....................................................53

*Fields v. Federal Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024) ............ passim

*Graham v. Gentry*, 413 F. App'x 660 (4th Cir. 2011)...................................41

*Graham v. Stallard*, 2020 WL 5778790 (W.D. Va. 2020)...............................41

*Harden v. Green*, 27 F. App'x 173 (4th Cir. 2001) ......................................53

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)..................................................48

*Hernandez v. Mesa*, 589 U.S. 93 (2020)................................................... passim

*Hood v. Bureau of Prisons*, 2023 WL 361872 (W.D. Va. 2023) ........................20

*Hower v. Damron*, No. 21-5996, 2022 WL 16578864 (6th Cir. 2022)...............45

*Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008) ...............................................52

*Jackson v. McNeil*, No. 20-35991, 2023 WL 3092302 (9th Cir. 2023)...............45

*Jean v. Smallwood*, 2022 WL 17969091 (W.D. Va. 2022)...............................20

*Johnson v. Terry*, 119 F.4th 840 (11th Cir. 2024)..................................... passim

*Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998) .....................................55

*Kalu v. Spaulding*, 113 F.4th 311 (3d Cir. 2024) .................................... 19, 27

*King v. United States*, 536 Fed. Appx. 358 (4th Cir. 2013) ...................... 31, 54

*Landis v. Moyer*, 2024 WL 937070 (3d Cir. 2024) (unpublished) .....................19

*Langford v. Joyner*, 62 F.4th 122 (4th Cir. 2023).......................... 31, 52, 53, 54

*Lewis v. Shah*, 466 Fed. Appx. 211 (4th Cir. 2012)................................. 31, 54

*Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352 (10th Cir. 2024)........................45

*Masias v. Hodges*, 2023 WL 2610230 (4th Cir. 2023) (unpublished) ................31

*Massaquoi v. Federal Bureau of Investigation*, 2023 WL 5426738
(9th Cir. 2023)....................................................................................45

*Mays v. Smith*, 70 F.4th 198 (4th Cir. 2023)........................................... passim

*McMellon v. United States*, 387 F.3d 329 (4th Cir. 2004) (en banc)............. 35, 36

*McNeal v. Hutchinson*, 2024 WL 1366553 (4th Cir. 2024)..............................26

iv

*Minneci v. Pollard*, 565 U.S. 118 (2012).........................................................53

*Morton v. Johnson*, 2015 WL 4470104 (W.D. Va. July 21, 2015).....................51

*Nellson v. Doe*, No. 21-6206, 2023 WL 3336689 (4th Cir. 2023) .............. passim

*Ortiz v. Webster*, 655 F.3d 731 (7th Cir. 2011)................................................32

*Patton v. Blackburn*, 2023 WL 7183139 (6th Cir. 2023) (unpublished).............19

*Pickens v. Lewis*, 2017 WL 3277121 (W.D.N.C. 2017)....................................41

*Procunier v. Martinez*, 416 U.S. 396 (1974)....................................................42

*Robinson v. Sauls*, 102 F.4th 1377 (11th Cir. 2024)..........................................45

*Rodrigues v. Hamilton*, 2021 WL 413530 (W.D. Va. 2021).............................41

*Rowland v. Matevousian*, 121 F.4th 1237, 1243 (10th Cir 2024).............23 26, 32

*Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. 2023)..........................................27

*Scinto v. Stansberry*, 841 F.3d. 219 (4th Cir. 2016)........................................31

*Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) .......................................................................................................52

*Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022)................................ 19, 44

*Swint v. United States*, 2025 WL 88836 (3d Cir. 2025) ....................................53

*Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022)......................................... passim

*Turner v. Safley*, 482 U.S. 78 (1987) ..................................................... 25, 42

*Ward v. Enigk*, 2024 WL 4524171 (3d Cir. 2024) (unpublished).......................23

*Washington v. Federal Bureau of Prisons*, 2022 WL 3701577 (D.S.C. Aug. 26, 2022) ........................................................................................ 26, 29

*Watkins v. Carter*, 2021 WL 4533206 (5th Cir. 2021) (unpublished).................20

*Watkins v. Martinez*, 2022 WL 278376 (5th Cir. 2022) (unpublished)...............20

*White v. Pauly*, 580 U.S. 73 (2017) ...............................................................48

*Wilkins v. Gaddy*, 559 U.S. 34 (2010) ............................................................51

*Wise v. Lappin*, 674 F.3d 939 (8th Cir. 2012)..................................................32

*Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985) ..............................................54

*Younger v. Crowder*, 79 F.4th 373 (4th Cir. 2023)..........................................49

*Ziglar v. Abbasi*, 582 U.S. 120 (2017).................................................... passim

**Statutes**

18 U.S.C. § 3621(i)(1)................................................................46

18 U.S.C. § 3622(a)(3)...............................................................46

18 U.S.C. § 3626........................................................................47

28 U.S.C. § 1331..........................................................................1

42 U.S.C. § 1983........................................................................15

**Regulations**

28 C.F.R. § 542.10(a).................................................................35

28 C.F.R. § 542.14(d)(1).............................................................41

## STATEMENT OF JURISDICTION

This is a civil appeal of a dismissal of a *Bivens* action in the United States District Court for the Western District of Virginia in the Roanoke Division. The district court entered its final order on March 18, 2024. JA162.[1] A timely notice of appeal was filed on May 17, 2024. JA163.

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1331.

## INTRODUCTION

This is a purported *Bivens* action. Appellant-Plaintiff Mandriez Spivey was an inmate at United States Penitentiary Lee in 2017 and 2018. After Spivey was released from incarceration, he filed suit against 13 federal employees in their individual capacities. All of his claims are judicially created causes of action, from their namesake case, *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Spivey's Complaint alleged, inter alia, that Bureau of Prisons employees violated his Eighth Amendment rights when he was (1) subjected to excessive force and (2) deprived of medical, dental, and mental health care while incarcerated.

The district court applied the Supreme Court's recent decision in *Egbert v. Boule*, 596 U.S. 482 (2022), and dismissed Spivey's claims as impermissible

---

[1] References to the Joint Appendix are designated as "JA___." References to Appellant's Brief are designated as "Brief at ___."

1

extensions of *Bivens*. The sole question on appeal is whether the district court correctly held that there is no remedy under *Bivens* for Spivey's alleged Eighth Amendment claims for excessive force and deprivation of medical, dental, and mental health care. The district court correctly applied the required two-step analysis from *Ziglar v. Abbasi*, 582 U.S. 120 (2017), holding first that Spivey's claims present "new contexts" and second the "special factors" test forecloses the judicial creation of a new damages remedy under the circumstances of this case. This Court should affirm.

## ISSUES PRESENTED

1.      Whether the district court correctly held there is no *Bivens* remedy for Spivey's novel Eighth Amendment claims alleging excessive force.

2.      Whether the district court correctly held there is no *Bivens* remedy for Spivey's novel Eighth Amendment claims alleging that prison officials failed to provide medical care for a decaying tooth, abdominal injuries, leg injury, and a mental health condition.

3.      Whether the district court's dismissal should be affirmed as to ten of the thirteen defendants for the alternative reason that those Defendants are entitled to qualified immunity.

## STATEMENT OF THE CASE

## I.     Relevant BOP Policy.

The provision of medical care to the approximately 150,000 inmates in Bureau of Prisons' (BOP) care involves a complex system that balances medical judgments, resource-allocation, security, and timing decisions for treatment in BOP facilities by BOP medical providers, as well as referrals for treatment by medical providers outside BOP facilities. That system is governed in part by BOP Program Statements that set forth different processes for review and approval of treatments for different conditions. *See* BOP, *About Our Agency*, https://perma.cc/LF37-DXWE; BOP, No. 6031.04, *Program Statement: Patient Care* § 8, at 7-8 (June 3, 2014) (BOP Program Statement 6031.04).

BOP provides five major levels of care to inmates, with specific processes for the provision and approval of care in each category: (1) Medically Necessary – Acute or Emergent; (2) Medically Necessary – Non-Emergent; (3) Medically Acceptable – Not Always Necessary; (4) Limited Medical Value; and (5) Extraordinary. BOP Program Statement 6031.04, § 7, at 5-7.

BOP's Dental Services Program Statement 6400.03 sets out the BOP's policies regarding the provision and prioritization of dental care services to inmates. It provides that an inmate may request comprehensive dental care "by submitting an

Inmate Request to Staff (BP-A0148) form, or any other means authorized by local policy and procedures." *Id.* § 6 at 9. If an inmate is eligible for care, "the date that the initial request is received is used as the entered date on the EMR 'Dental Routine Treatment List'. This date follows the inmate from one facility to another as part of a national wait list." *Id.* Dental care to inmates on the waiting list "will be provided in chronological order; i.e., those waiting the longest will be seen first." *Id.* "Institutions will provide access to comprehensive care for eligible inmates as resources and staff are available." *Id.* Comprehensive, non-urgent dental care includes diagnostic procedures, preventative services, routine dental procedures, and advanced dental treatment. *Id.* § 9 at 14-17.

The Dental Services Program Statement also sets out BOP's policies for the provision of urgent dental care. *Id.* § 10 at 19. "Urgent dental care includes treatment for relief of severe, acute dental pain, traumatic injuries, and acute infections exhibiting the cardinal signs of infection." *Id.* It includes "palliative treatment intervention that may include placement of sedative, temporary restorations, extraction of non-restorable teeth, pulpectomy, and gross debridement of symptomatic areas." *Id.* "Urgent dental care is the highest priority" and "may be requested on a 24-hour basis." *Id.*

The Psychology Services Department is a "separate, centralized department within the institution." P5310.17 at 3, *available at* https://www.bop.gov/policy/progstat/5310_017.pdf. All BOP facilities employ psychologists and are expected to provide services for inmates with mental illness. PS 5310.13 at 11, *available at* https://www.bop.gov/policy/progstat/5310_16.pdf.

Inmates are classified based on their need for mental health services. PS 5310.13, 5310.16. There are four classification levels. "To assign a care level, staff consider the inmate's current, recent, and historical need for services. . . . balanced with the inmate's diagnosis and anticipated need for future services." *Id.*

Psychological needs are reviewed as indicated based on the inmate's care level or as otherwise indicated. Additionally, the BOP has various mental health treatment programs for various inmates' needs. *See* PS 5330.11 CN-1, *available at* https://www.bop.gov/policy/progstat/5330.11.pdf.

## II. Spivey's Allegations.

Spivey was an inmate at USP Lee from December 2017 until October 2018. Spivey's Complaint alleges as follows:

- Counts 1 and 2 allege excessive force on January 16, 2018, when officers purportedly placed Spivey in tight restraints (Defendants Bowles, Mullins,

and Cantrell) and other employees allegedly failed to intervene (Defendants Phelps and Smith);

- Counts 3 and 4 allege excessive force on January 16, 2018, when officers allegedly "slammed" Spivey's head into a wall and beat him with a shield (Defendants Bowles, Mullins, and Cantrell);

- Count 5 alleges denial of medical treatment after the January 16, 2018 incident (Defendant McIntyre);

- Count 6 alleges denial of dental care for a decaying tooth unrelated to the January 16, 2018 incident and other dental issues (Defendants Pease and Breckon);

- Count 7 alleges denial of medical care for rectal bleeding and stomach pain unrelated to the January 16, 2018 incident (Defendant Kirby);

- Count 8 alleges denial of mental health care for depression (Defendants Babnew, Bailey, and Cunic);

- Count 9 alleges excessive force when an officer purportedly touched Spivey's buttock during pat-down searches unrelated to the January 16, 2018 incident (Defendant Moore).

JA25-33.

## A.     Alleged Excessive Force

### 1.     Alleged Force During Detention on January 16, 2018

Spivey alleges three BOP employees, Lieutenant Bowles, Officer Mullins, and Officer Cantrell, used excessive force during an investigation into misconduct by Spivey's cellmate on January 16, 2018.  He alleges two other employees who were present during the incident, Nurse Nancy Smith and Captain Phelps, did not use force themselves but did not accede to his requests to intervene.

During the incident with his cellmate, Spivey was subjected to a search that required him, as is standard practice, to remove all clothing to ensure he was not concealing dangerous contraband.  Spivey was uncooperative with the process and stated he was going to assault a staff member.  JA17, 42.  The Complaint alleges Defendant Bowles ordered Spivey in ambulatory restraints.  JA17.

Spivey alleges that either Defendant Officer Mullins or Defendant Officer Cantrell placed the hand restraints on him too tightly.  JA18.  Spivey claims he told Defendant Nurse Nancy Smith the restraints were too tight and she inspected them but disagreed and did not loosen them.  JA18.  Spivey claims Defendant Phelps did not respond to Spivey's complaints.  JA18.  Spivey makes no other allegations against Smith or Phelps.

Spivey then alleges that Bowles, Mullins, and Cantrell moved him to a different cell where Bowles ordered Mullins and Cantrell to use force on Spivey. JA18-19. Spivey alleges the officers slammed a shield into his back, ankles, and calves, slammed his head against the wall, and stepped on his toes. JA19. He alleges pain, discomfort, and scarring from this incident, as well as emotional distress. JA19.

## 2. Alleged Unnecessary Force During Pat-Down Searches

Unrelated to the above incident, Spivey also alleges he was subjected to unnecessary force during pat-down searches performed by Defendant Officer Mark Moore. According to Spivey, "Moore slid his knuckle down [Spivey's] buttock" during the searches, and Moore "repeated this behavior on numerous occasions." JA24. Spivey claims that Moore violated his Eighth Amendment rights—or, in the alternative, his Fourth Amendment rights—by "unnecessarily" touching his buttocks "for the purpose of sadistically harassing and humiliating [Spivey]." JA24.

## B. Alleged Denial of Adequate Dental, Medical and Mental Health Care

Spivey further alleges he was unconstitutionally denied adequate dental, medical and mental health treatment during his ten-month period of incarceration at USP Lee. He alleges he was denied medical treatment for leg pain resulting from the use of force; he was placed on a waiting list for dental treatment but did not see

a dentist; his requests for mental health treatment during the same period were denied; and he underwent a fecal test but did not receive any other medical care for complaints of stomach pain and rectal bleeding, neither of which is alleged to have been the symptom of a subsequently diagnosed, serious medical condition.

### 1. Alleged Denial of Care for Tooth Pain

Before being transferred to USP Lee, Spivey was diagnosed with dental caries (commonly known as tooth decay) and pulpitis (commonly known as tooth inflammation). Spivey did not receive treatment for either dental issue prior to his transfer. Following his transfer to USP Lee, Spivey allegedly began experiencing severe tooth pain. JA20-21. When Spivey complained to Defendant Karen Pease, a member of BOP's medical staff, about his dental problems, Pease informed that him that USP Lee did not have a staff dentist. JA21. Spivey alleges that Pease placed him on a waiting list for dental care but did not "provide any further medical or dental care for [his] dental issues." JA21.

At some point thereafter, Spivey informed Warden Michael Breckon he needed treatment for severe tooth pain. JA21. Spivey alleges Warden Breckon "knew or should have known that USP Lee did not have a staff dentist" and that Breckon failed to procure one, "resulting in an inadequate waiting list for dental care." JA21.

While Spivey was waiting for dental treatment, he broke a different tooth and removed the remaining portion of that broken tooth himself, which caused severe pain, which was also allegedly untreated. JA21.

### 2. Alleged Denial of Medical Treatment for Abdominal and Rectal Issues

Spivey alleges he also experienced rectal bleeding and stomach pain at an unspecified time and due to unspecified causes during his incarceration at USP Lee. Spivey reported these issues to Defendant Physician Assistant Thomas Kirby on an unspecified date. Spivey admits that Kirby "administered a feces test" but contends that Kirby did not allow him to talk to a doctor. JA22. Spivey alleges he did not receive any additional medical care for the rectal bleeding or stomach pain. Spivey does not allege he ever developed or was diagnosed with any medical issue related this symptom. JA23.

### 3. Alleged Denial of Mental Health Care

Spivey alleges he has "a history of significant mental health issues, including, upon information and belief, a rule-out diagnosis for major depressive disorder (recurrent and severe)." JA23. During his period of incarceration at USP Lee, Spivey alleges he requested mental health care, specifically claiming he requested "mental health care through a pre-release psychology class." JA23. He alleges Defendant Tanya Cunic, the Chief Psychologist, denied his request for the "pre-

release class." He alleges Defendant Jessica Babnew, the Drug Abuse Program Coordinator, and Defendant Lauren Bailey, a staff psychologist, also denied him mental health care, which he claims resulted in mental and emotional distress, but does not allege he was subsequently diagnosed with any serious medical or mental health condition. JA23.

### 4. Alleged Denial of Medical Treatment for Leg Injuries

Following the January 2018 incident, Spivey alleges he suffered severe pain in his Achilles tendons and calves because of the alleged use of force, and that he notified Defendant Wanda McIntyre, a nurse, that he needed medical care. JA20. Spivey alleges McIntyre denied his request for medical care and that he continued to experience severe discomfort in his Achilles tendons and calves for the remainder of his incarceration. JA20.

### C. Allegations about Exhaustion of Administrative Remedies

Spivey's complaint alleges he "attempted to file administrative remedy requests" but it does not provide any detailed allegations about whether he tried to report all the above complaints, or only some of them. JA24. Nor does Spivey allege how or when he purportedly tried to exhaust each of his separate claims. In short, the Complaint does not allege whether, when, or how Spivey tried to file

remedies for both uses of force, the alleged denial of medical care, the alleged denial of dental care, or the alleged denial of mental health treatment.

Spivey alleges, however, that "USP Lee administrators identified as Ms. Bowles, Pendergrass, and Bentley . . . prevented [him] from [filing remedies] by either refusing to file his administrative remedy requests or claiming to have lost his administrative remedy request forms." JA24. But again, the Complaint did not allege which of the administrators denied each (or any) of his purported efforts, and how they allegedly did so.

## III.    Procedural History

Spivey commenced this action in July 2020 by filing a *pro se* complaint. Counsel appeared on his behalf in November 2021 and filed the operative Third Amended Complaint on November 16, 2022. JA15. On March 17, 2023, the defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), or in the alternative moved for summary judgment pursuant to Rule 56. JA35. The government argued the case should be dismissed because (1) a *Bivens* remedy is unavailable for his claims; (2) the statute of limitations bars the claims stemming from January 16, 2018; and (3) defendants are entitled to qualified immunity. JA35-37.

The district court did not rule on the government's Motion for Summary Judgment, but granted the government's Motion to Dismiss on the basis that Spivey had no *Bivens* remedy. The Court did not address the statute of limitations[2] or qualified immunity arguments. This timely appeal followed.

## SUMMARY OF ARGUMENT

The Supreme Court has all but overruled *Bivens*. While the ultimate fate of *Bivens* is not yet decided, the Court has warned that courts must not extend *Bivens* if there is "*any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 596 U.S. 482, 494 (2022). Nonetheless, Spivey asks this Court to create new causes of action under which he can recover monetary damages from BOP employees in their personal capacities. The district court correctly heeded *Egbert's* warning and declined to do so. This Court should do the same.

Spivey's claims regarding his medical, dental, and mental health treatment arise in a new context because they implicate systemic concerns about the BOP's day-to-day management of myriad medical conditions, such as Spivey's Achilles injury, his decaying tooth, his stomach pain, or his depression. Treatment for such

---

[2] In the event this case is remanded, the government reserves its right to argue, pursuant to Rule 56, that the statute of limitations bars Spivey's claims.

conditions implicate the BOP's resource-allocation, security, and timing decisions and are thus unlike those at issue in any of the three previously recognized *Bivens* contexts, including *Carlson*. For example, Spivey recognizes that USP Lee did not have a staff dentist, causing Spivey to be placed on a waiting list. As for Spivey's excessive force claims, Spivey does not contend they are an old context.

Because all of Spivey's claims arise in a new context, the Court must decline to create a cause of action so long as there is even one reason to defer to Congress's policymaking role within the separation of powers. *Id.* As for Spivey's medical claims, there are multiple reasons to defer to Congress, but two are preeminent: (1) Congress is better equipped to weigh how creating a cause of action regarding the administration of medical care within BOP facilities may impact the prison system more broadly, and (2) there are numerous alternative remedial measures, such as injunctive relief and the BOP's own administrative scheme, for claims of inadequate medical care. As for Spivey's excessive force claims, there are again multiple reasons the courts should not infringe on Congress's domain, including (1) Congress is better equipped to weigh how creating a cause of action will affect prison security systemwide, such as calling into question the manner and use of hand restraints and the scope of body searches; and (2) there are numerous alternative remedial measures, such as BOP's Administrative Remedies Program and the Office of

Inspector General investigations, in the event a BOP employee engages in excessive force.  For these reasons, sister circuits that have considered analogous claims post-*Egbert* have declined to extend a *Bivens* remedy.   So too should this Court.

Lastly, the district court's dismissal could be affirmed as to ten of the defendants on the alternative ground that they are entitled to qualified immunity.

## STANDARD OF REVIEW

The Court reviews *de novo* the dismissal of Spivey's complaint for failure to state a claim under *Bivens*, accepting all well-pleaded factual allegations—but not conclusory statements or legal conclusions—as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bulger v. Hurwitz*, 62 F.4th 127, 135 (4th Cir. 2023).

## ARGUMENT

### I.   THE DISTRICT COURT CORRECTLY DECLINED TO EXTEND A *BIVENS* REMEDY TO SPIVEY'S CLAIMS.

In 1871, Congress enacted a law that gives inmates the right to sue state officials for civil rights violations under the Constitution. 42 U.S.C. § 1983.  In the century and a half that has followed, Congress has not passed a similar statute that would give inmates a cause of action to sue federal officials for such violations. Spivey asks the Judiciary to step into the void and create a cause of action for him in the form of a constitutional tort.  This Court should not do so.

This Court has explained that federal courts have "highly restrict[ed]" authority to imply a new constitutional tort not expressly authorized by statute. *Tate v. Harmon*, 54 F.4th 839, 844 (4th Cir. 2022); *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023); *see also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Indeed, judicially created constitutional torts are so "disfavored" that they should be avoided in "all but the most unusual circumstances." *Egbert*, 596 U.S. at 486, 491.

The authority of the Judiciary to fashion new causes of action is so limited that the Supreme Court has created a damages remedy for an alleged constitutional violation only three times, the most recent of which was 44 years ago. *See Bivens*, 403 U.S. 388 (1971) (Fourth Amendment violation involving warrantless search and arrest in a person's home, accompanied by excessive use of force); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment equal-protection violation involving sex discrimination in congressional-staff employment); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment violation involving the failure to treat an inmate's asthma, resulting in his death).

Since then, in the course of deciding 12 more cases, the Supreme Court has declined to extend *Bivens* and has all but overruled it. *Egbert*, 596 U.S. at 486 (collecting cases); *Johnson v. Terry*, 119 F.4th 840, 851 (11th Cir. 2024) (*Bivens* is

"staring extinction in the face"). In 2017, and again in 2020, the Court stated that "'if the Court's three *Bivens* cases had been decided today,' it is doubtful that we would have reached the same result." *Hernandez*, 589 U.S. at 101 (quoting *Ziglar*, 582 U.S. at 134). And in 2022, the Court went further and stated, "we have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution." *Egbert*, 596 U.S. at 502.[3] In short, the law is clear: when courts are thinking about recognizing a new *Bivens* claim, the "watchword" is "caution." *Egbert*, 596 U.S. at 491; *Malesko*, 534 U.S. at 74.

The reluctance to extend *Bivens* is rooted in constitutional concerns. A judicially implied cause of action "places great stress on the separation of powers" by allowing the Judiciary to intrude upon the exclusive law-making domain of the legislature. *Egbert*, 596 U.S. at 498 n.3.

Accordingly, *Ziglar* held that a court must strictly apply a two-part test to determine whether it should override the caution demanded and create a cause of action against federal officials. 582 U.S. at 134-37. A court must first determine whether the claim arises in a "new *Bivens* context" by deciding whether the case

---

[3] The Court may soon have its opportunity to directly address the issue. The defendants in *Fields v. Federal Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024), filed a petition for writ of *certiorari* on January 21, 2025.

differs "in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 139. If it does not, then a *Bivens* remedy exists. But if the claim does present a new context, then the court must consider whether any special factors counsel hesitation before creating the new damages remedy in that context. *Id.* at 140. In asking whether special factors counsel hesitation, the court gives important weight to "'separation-of-powers principles'" and "consider[s] the risk of interfering with the authority of the other branches." *Hernandez*, 589 U.S. at 102 (quoting *Ziglar*, 582 U.S. at 135). "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quotation omitted). As this Court emphasized in *Tate*, "[t]he political branches are indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" 54 F.4th at 848 (quoting *Egbert*, 596 U.S. at 493).

Spivey's claims are not the rare and exceptional type of allegations for which this Court should legislate a new cause of action.

## A. Spivey's Claims Fail Step One: They Present A New Context.

The district court correctly held that all of Spivey's Eighth Amendment claims arise in a new context.[4]

### 1. Spivey's excessive force claims (Counts 1, 3, and 9) arise in a new context.

The district court correctly held that Spivey's excessive force claims arise in a new context. JA151-52 & n.2. First, Spivey does not argue on appeal his excessive force claims are not a new context. *See* Opening Br. at 2, 37-38. Second, this Court in *Fields v. Federal Bureau of Prisons*, 109 F.4th 264, 270 (4th Cir. 2024), treated a similar excessive force claim as arising in a new context. *See id.* (noting the inmate did not dispute the new context). That conclusion is consistent with every court of appeals to have decided the issue. *See generally Terry*, 119 F.4th at 851; *Kalu v. Spaulding*, 113 F.4th 311, 327 (3d Cir. 2024); *Landis v. Moyer*, 2024 WL 937070, at *2 & n.7 (3d Cir. Mar. 5, 2024) (unpublished); *Ajaj v. Fozzard*, No. 23-2219, 2024 WL 4002912, at *2 (7th Cir. Aug. 30, 2024) (unpublished); *Patton v. Blackburn*, 2023 WL 7183139, at *2 (6th Cir. May 2, 2023) (unpublished); *Silva v.*

---

[4] Spivey has appealed the dismissal of three claims relating to excessive force and three claims relating to failure to provide adequate medical, dental and medical care. He does not appeal the dismissal of Counts 2 and 4, which alleged violations of the Fifth Amendment.

*United States*, 45 F.4th 1134, 1137 (10th Cir. 2022); *Chambers v. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023); *Alsop v. Fed. Bureau of Prisons*, 2022 WL 16734497, at *3 (3d Cir. Nov. 7, 2022) (unpublished); *Watkins v. Martinez*, 2022 WL 278376, at *1 (5th Cir. Jan. 31, 2022) (unpublished); *Watkins v. Carter*, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (unpublished); *see also Jean v. Smallwood*, 2022 WL 17969091, at *5 (W.D. Va. Dec. 27, 2022); *see also Ball v. Streeval*, 2023 WL 1930003, at *4 (W.D. Va. Feb. 9, 2023); *Hood v. Bureau of Prisons*, 2023 WL 361872, at *9 (W.D. Va. Jan. 20, 2023), *aff'd*, 2023 WL 5561319 (4th Cir. Aug. 29, 2023) (per curiam).

Spivey's excessive force claim against Phelps and Smith for allegedly failing to intervene as to the "too tight" hand restraints arises in a new context for an additional reason. JA25. This Court has explicitly held that failure to protect and failure to intervene claims asserted under the Eighth Amendment "exceed the bounds of liability the [Supreme] Court's previous *Bivens*, actions established." *Bulger*, 62 F.4th at 138; *see also Chambers*, 78 F.4th at 1105–06.

## 2. Spivey's medical, dental, and mental health care claims (Counts 5, 6, 7, and 8) arise in a new context.

The district court also correctly held that Spivey's medical, dental, and mental health care claims present a new context from *Carlson*.

A claim presents a new context if it is "meaningfully different" from the three

cases in which the Supreme Court has implied a cause of action. *Egbert*, 596 U.S. at 492. Although the term "meaningfully different" is not clearly defined, the Supreme Court has given some direction.

First, the Supreme Court has instructed that courts take a "broad" understanding of what constitutes a "new context," *Hernandez*, 589 U.S. at 102, because "even a modest extension [of *Bivens*] is still an extension," which is "disfavored." *Ziglar*, 582 U.S. at 147. Said another way, unless an action falls "precisely" under *Bivens*, *Davis*, or *Carlson*, it is likely a new context, and the courts are "clearly warned to act with *utmost hesitation*" before finding otherwise. *Tate*, 54 F.4th at 845 (emphasis added).

Second, the Supreme Court has instructed that to determine whether a claim arises in a new context, this Court should look to a number of factors, including the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to a problem or emergency, statutory or other legal mandate under which the officer was operating, the risk of disruptive intrusion by the judiciary into the functioning of other branches of government, or the presence of potential special factors that previous *Bivens* cases did not consider. *Ziglar*, 582 U.S. at 139-40. A "new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Tate*, 54 F.4th at 846.

Additionally, a new context may arise if the class of defendants is different than *Bivens, Carlson*, or *Davis*. *Mays*, 70 F.4th at 205.

Third, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103. For example, *Bivens* permitted a damages claim under the Fourth Amendment against a federal narcotics officer for excessive force while *Egbert* rejected a very similar claim against a Border Patrol agent. Although *Egbert* and *Bivens* both involved similar allegations of excessive force by law enforcement, those "superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495. And this Court explained in *Bulger* that "the Supreme Court has made clear that courts should not interpret *Carlson* to apply outside the precise context at issue in that case, noting that even claims challenging the adequacy of medical care may involve the same right and . . . mechanism of injury as in *Carlson*, but still present different contexts." *Bulger*, 62 F.4th at 138; *see also Nellson v. Doe*, No. 21-6206, 2023 WL 3336689, at *4 (4th Cir. May 10, 2023) ("Even claims alleging deliberate indifference to an inmate's medical needs, though they 'involve the same right and mechanism of injury as in *Carlson*,' may 'still present different contexts.'").

Even if claims allege the same type of constitutional tort, "quite minor" differences can amount to a new context. *Mays*, 70 F.4th at 203 (quoting *Tun-Cos*, 922 F.3d at 523). Indeed, given the "expressed caution about extending the *Bivens* remedy," even "significant parallels to one of the Court's previous *Bivens* cases" may not be enough to show that a case arises in the same context. *Ziglar*, 582 U.S. at 147. As applied here, that means that even if differences between Spivey's case and *Carlson* are "perhaps small, at least in practical terms," the new context inquiry can still be "easily satisfied." *Id.*

*Carlson* involved individual BOP employees' discrete acts of malfeasance by acting against doctor orders, providing contra-indicated treatment, and failing to provide emergency life-saving care. *Carlson*, 446 U.S. at 16 n.1. Applying *Ziglar*, courts have declined to extend a *Bivens* remedy to various allegations regarding medical care, holding they present a new context from *Carlson*. *See, e.g., Rowland v. Matevousian*, 121 F.4th 1237, 1243 (10th Cir. Nov. 19, 2024); *Terry*, 119 F.4th at 857–62; *Clinkenbeard v. Auten*, 2024 WL 3026125 (7th Cir. June 17, 2024); *Ward v. Enigk*, 2024 WL 4524171 (3d Cir. Oct. 18, 2024) (unpublished); *Anderson v. Fuson*, 2024 WL 1697766 (6th Cir. Feb 1. 2024) (unpublished) (alleging remarkably similar facts); *see also Nellson*, 2023 WL 3336689, at *4 (holding that prisoner's claim that a warden and lieutenant failed to

provide him with a walker or wheelchair during his placement in the SHU represented a new context from *Carlson*).

Spivey's claims likewise present a novel context different from *Carlson*. The thrust of the Complaint is that Spivey disagrees with how medical care was (or was not) provided to him at USP Lee under dissimilar factual circumstances from *Carlson*. Spivey argues that how BOP responded to his alleged dental issues, leg injuries, abdominal and rectal issues, and mental health condition, was constitutionally inadequate. But he does not plausibly allege discrete acts of deliberate malfeasance by any of the seven different medical professionals he has sued. To the contrary, although he seeks to hold several employees individually liable, his claims rest on his dissatisfaction with the BOP's institutional decisions regarding the proper treatment of particular medical conditions. Because Spivey's claims implicate and challenge BOP policy, they are meaningfully different along numerous dimensions the Supreme Court has identified: they necessarily implicate the "risk of disruptive intrusion by the Judiciary" into prison functions, they bear on "the generality or specificity of the official action" and the "extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted," and they implicate "special factors that previous *Bivens* cases did not

consider." *Ziglar*, 582 U.S. at 140. Indeed, a detailed review of the *Ziglar* factors confirms Spivey's complaints arise in a new context.

First, Spivey's claims implicate the complex system of prison healthcare and many other actors, such as the prison staff who schedule appointments with an outside dentist and the resources it takes to transport and accompany inmates to appointments outside the secure confines of a Bureau facility. Spivey's claims also implicate and challenge broader-level and more systemic issues within the BOP, like administrative decisions concerning the management of certain medical conditions and mental health care and staffing decisions related to having professionals onsite. *See Bulger*, 62 F.4th at 138 (holding that a claim was meaningfully different from *Carlson* where it implicated "organizational policies, administrative decisions, and economic concerns inextricably tied to" an inmate's treatment). Courts have not provided—and are ill-suited to provide—the same degree of guidance for how BOP must balance and manage such decisions. *See Turner v. Safley*, 482 U.S. 78, 84-86 (1987).

Even if courts could manage such decisions, doing so would involve a greater "risk of disruptive intrusion by the judiciary" into prison functions than *Carlson*. *Ziglar*, 582 U.S. at 140. As the Supreme Court has made clear, attempts to use individual *Bivens* actions to permit general judicial supervision of the BOP's

decisions about how to administer medical care to inmates are impermissible; courts are not suited to evaluate individual treatment decisions made in the context of the BOP's other resource, medical, and security constraints. *See Ziglar*, 582 U.S. at 140-41. Spivey's claims would require the very type of judicial second-guessing of prison administration and medical decision-making that the Supreme Court has cautioned against, and therefore his claims present a new context from *Carlson*. *Rowland*, 121 F.4th at 1243; *Washington v. Federal Bureau of Prisons*, 2022 WL 3701577, at *1 (D.S.C. Aug. 26, 2022); *see also McNeal v. Hutchinson*, 2024 WL 1366553 (4th Cir. 2024) (affirming dismissal of *Bivens* claims regarding BOP treatment of inmate's stomach and foot pain because they presented new context from *Carlson*).

For example, Spivey's claims regarding dental care amount to a disagreement with BOP policy about when to employ an on-site dentist and what constitutes urgent dental care. Similarly, Spivey's complaint that BOP medical staff should have done more than give him a fecal test (which came back negative) is likewise a disagreement with when, which, and how medical tests are ordered. Claims like Spivey's would require prison employees who are implementing BOP medical policies to weigh the risk of individual-capacity damages suits brought by inmates who disagree with the agency's systemic decisions about how to manage care and

balance resource constraints, security considerations, and other matters. Spivey's claims, unlike the allegations of straightforward individual malfeasance in *Carlson*, implicate "sensitive line-drawing considerations that courts are ill-positioned to assess." *Kalu v. Spaulding*, 113 F.4th 311, 328 (3d Cir. 2024); *see also Sargeant v. Barfield*, 87 F.4th 358, 367 (7th Cir. 2023) (finding a new context where the plaintiff's prison-related claim "factor[ed] in a sensitive mixture of things [courts] are ill-positioned to assess—a prison's determinations about safety, discipline, and resources"). "The heightened risk of intrusive judicial inquiry into an area that has been committed to the responsibility of the political branches distinguishes this case from *Carlson* and provides another reason to conclude that it presents a new *Bivens* context." *Kalu*, 113 F.4th at 329 (citing *Turner*, 482 U.S. at 85).

Additionally, as discussed per defendant below, Spivey's claims would extend liability to new categories of defendants and to new mechanisms of injury, while being far more generic than specific. *Bulger*, 62 F.4th at 138; *Ziglar*, 582 U.S. at 140. And judicial guidance regarding how the prison, especially the Warden, should respond when faced with an inmate's medical needs like Spivey's is far less developed than the medical scenario the Court addressed in *Carlson*, 446 U.S. at 17 & n.3. *See Ziglar*, 582 U.S. at 148 ("[T]he judicial guidance available to this warden, with respect to his supervisory duties, was less developed.").

These factors apply to each Count as follows:

### i.     Defendants Pease and Breckon (Count 6)

Spivey makes two separate allegations related to dental care. First, he alleges Defendant Pease informed him the prison did not currently have an on-site dentist and put him on a waiting list to see an off-site dentist regarding tooth pain in a decaying tooth. He separately alleges that at a later, unspecified date, he broke a different tooth and again was delayed in receiving dental care. He alleges the reported his dental pain to the Warden who "fail[ed] to procure a staff dentist" or otherwise get Spivey's dental issues treated. JA30-31. Whether BOP has an on-site dentist, what constitutes urgent dental care under BOP policy, and how the Bureau provides non-urgent dental care, goes to the heartland of prison administration and the separation of powers. *See supra* at 8 (BOP Program Statement discussing what constitutes as urgent dental care). The thrust of Spivey's allegation is a challenge to these BOP policies, not deliberate malfeasance by medical staff member Pease or Warden Breckon. Indeed, Spivey does not allege they engaged in any behavior that was contraindicated or against doctor orders or BOP policy. *See Washington v. Fed. Bur. of Prisons*, No. 16-cv-3913, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) ("Plaintiff's *Bivens* claims here risk transforming this Court into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury.").

### ii. Defendant Kirby (Count 7)

Spivey's claim that Defendant Kirby provided inadequate medical treatment for his rectal bleeding and stomach pain amounts to a disagreement with the treatment that was provided and the fact it was provided by a physician assistant instead of a medical doctor. He specifically alleges that defendant Kirby "administered a feces test" but did not provide the additional care that Spivey would have preferred. JA22. Spivey does not allege he was eventually diagnosed with a serious medical condition. He also does not allege he suffered any injury to which Kirby responded with deliberate acts of malfeasance or indifference, like in *Carlson*. Spivey's generic allegations are not similar to the specific allegations in *Carlson*.

### iii. Defendants Babnew, Bailey and Cunic (Count 8)

Spivey's claims against two BOP psychologists and a Drug Abuse Program Coordinator would extend liability to new categories of defendants and to new mechanisms of injury, they are far too generic, and they relate directly to prison policy. Spivey has sued the psychologists and program coordinator claiming he was denied "a pre-release psychology class" and mental health care on an unspecified number of times on unspecified dates. JA23. Spivey argues that because of these denials, he suffered "mental and emotional distress." JA23. Spivey's allegations again appear to amount to a disagreement with the assessments and provision of certain classes or care offered at BOP. For example, Spivey takes issue with being

29

denied a "pre-release psychology class" on the alleged basis that he was under a detainer which precluded his participation, and then baldly asserts the "detainer had no force." JA23. Spivey does not allege he was ever formally diagnosed with a serious medical or mental health condition resulting from this alleged denial. He claims "upon information and belief," he has a "rule-out diagnosis for major depressive disorder," and but does not say when he received the rule-out diagnosis. JA23. He also does not allege he suffered any condition to which any of the psychology staff or the Drug Abuse Program Coordinator responded with deliberate acts of malfeasance, like in *Carlson*. Spivey's generic allegations are not similar to the specific allegations in *Carlson*.

### iv. Defendant McIntyre (Count 5)

Spivey alleges that Nurse McIntyre provided inadequate medical care when Spivey reported pain in his Achilles tendon and calves to her, but she did not provide his requested medical care. Spivey has pointed to no judicial guidance that would inform the constitutional standards for examining a leg injury, nor does he specify the treatment that he believes was constitutionally required under the circumstances. Those "differences . . . are meaningful enough to make a given context a new one." *Ziglar*, 582 U.S. at 139-40 (stating that a claim arises in a new context when it would require the examination of different "judicial guidance as to how an officer should respond to the problem or emergency to be confronted"). Spivey also has pointed

30

to no caselaw that would disturb the district court's conclusion. He relies principally on *Scinto v. Stansberry*, 841 F.3d. 219 (4th Cir. 2016), but that case predates *Egbert* and *Ziglar* and does not address whether the plaintiff's claims presented a new context under *Carlson* using *Ziglar's* now-required two-step analysis. *See* Br. at 23. Indeed, *Scinto* did not decide that question because defendants did not argue that plaintiff Scinto did not have a cause of action. Spivey's reliance on this Court's unpublished decision in *Masias v. Hodges*, 2023 WL 2610230 (4th Cir. Mar. 23, 2023), is similarly unavailing. Br. at 24. *Masias* rejected the argument that an inmate's claims presented a new context solely because "his claims were not as severe as those in Carlson and were not likely to cause permanent damage or death." *Id.* 1. Defendants have not raised that argument on appeal. And Spivey's other cited cases – *Langford v. Joyner*, 62 F.4th 122 (4th Cir. 2023), *King v. United States*, 536 Fed. Appx. 358 (4th Cir. 2013), and *Lewis v. Shah*, 466 Fed. Appx. 211 (4th Cir. 2012) – did not address whether the plaintiff's *Bivens* allegations constituted a new context from *Carlson* at all, and instead dismissed the claims under Rule 8 for failure to state a claim of deliberate indifference to a serious medical need amounting to a violation of the Eighth Amendment. *See* Br. at 24-25. Indeed, the court below ably explained why *Langford* did "not compel a different conclusion." JA156.

Spivey also cites cases from other circuits, which are not binding. Moreover, the Third, Fifth, Seventh, and Eighth Circuit cases he cites did not analyze whether the plaintiff's medical indifference claims presented a new context from *Carlson*. *See* Br. at 26 (citing *Cross v. Buschman*, 2024 WL 3292756 (3d Cir. July 3, 2024); *Carlucci v. Chapa*, 884 F.3d 534 (5th Cir. 2018); *Ortiz v. Webster*, 655 F.3d 731 (7th Cir. 2011); *Wise v. Lappin*, 674 F.3d 939 (8th Cir. 2012)). Moreover, all but one predated *Egbert*, and both the Seventh and Eighth Circuit decisions predate *Ziglar*. The other case cited by Spivey from the Fifth Circuit is an unpublished decision, which simply states the court was bound by *Carlucci*.

This Court should follow the Tenth Circuit's decision in *Rowland* and the Eleventh Circuit's decision in *Terry* by holding that Spivey's medical, dental, and mental health claims present a new context from *Carlson*.

**B.    Spivey's Claims Fail Step Two:  Special Factors Preclude Extending A *Bivens* Remedy Here**

When a purported *Bivens* claim arises in a new context—as here—the Court must consider whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). Separation-of-powers principles are central to the analysis. *Hernandez*, 589 U.S. at 102; *Tate*, 54 F.4th at 848; *Mays*, 70 F.4th at 203; *Nellson*,

32

2023 WL 3336689, at *3; *Bulger*, 62 F.4th at 137. The inquiry focuses on "the risk of interfering with the authority of the other branches, and . . . ask[s] whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." *Hernandez*, 589 U.S. at 102 (quotation marks omitted).

This Court must not "independently assess the costs and benefits of implying a cause of action." *Egbert*, 596 U.S. at 496. Instead, the Court must ask "broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." *Id.* "[I]f there is even the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* (quoting *Ziglar*, 582 U.S. at 138-140).

Here, the district court correctly held that Congress is better positioned than the Court to create a damages remedy for Spivey's claims.

### 1. Special factors preclude extending *Bivens* to Spivey's excessive force claims

Spivey's excessive force claims fail the special factors test for at least two independent reasons: (1) alternative remedial structures exist, including BOP's alternative remedy program, OIG investigations, and injunctive relief; and (2) the judiciary is ill-suited to evaluate the systemic consequences of creating new damages claim when the conduct intersects with prison security.

Spivey nonetheless argues that this Court's recent decision in *Fields* controls his case and requires the Court to extend a *Bivens* remedy here. He is wrong.

In *Fields*, a divided court held that a *Bivens* remedy exists for Eighth Amendment excessive force claims when two conditions are met: (1) the case is against "front line officers" who "personally subjected the plaintiff to excessive force in clear violation of prison policy"; *and* (2) the Complaint alleges the inmate "lacked access to alternative remedies because prison officials deliberately thwarted access to them." 109 F.4th at 272, 274. *Fields* does not control here, because the portions of *Fields* on which Spivey relies conflict with prior precedent and because Spivey's case is distinguishable regardless.

### i. Fields was wrongly decided.

First, the government maintains *Fields* was wrongly decided. As explained in the petition for certiorari, *Fields* conflicts with every circuit to have addressed whether special factors preclude extending a *Bivens* remedy to Eighth Amendment excessive force claims. *See Goldey v. Fields, III.*, Case No. 24-809, cert petition. *See also Terry*, 119 F.4th at 851 (describing *Fields* as a "far-afield outlier," which "may lead to en banc reconsideration or to the Supreme Court finally rendering *Bivens* cases extinct").

### ii. Where *Fields* conflicts with Supreme Court or prior Fourth Circuit precedent, those decisions control.

Second, where *Fields* conflicts with prior decisions of this Court, or those of the Supreme Court, those other decisions control. *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc).

Congress, through the Executive Branch, is responsible for the BOP Administrative Remedies Program, which allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Prior to *Fields*, the Supreme Court had held (and reiterated) that "*Bivens* relief was unavailable because federal prisoners could . . . file grievances through an 'Administrative Remedy Program.'" *Egbert*, 596 U.S. at 497 (quoting *Malesko*, 534 U.S. at 74). Following that precedent, the Fourth Circuit also held that BOP's Administrative Remedies Program forecloses extending *Bivens* to prisoner claims. *See Mays*, 70 F.4th at 205 ("Inmates . . . have an 'alternative remedial structure' that allows them to seek equitable relief for issues related to confinement, discipline, and the like."); *Bulger*, 62 F.4th at 140 (finding the BOP administrative remedy process was an alternative remedy precluding expansion of *Bivens*); *see also Nellson*, 2023 WL 3336689, at *5 ("[T]he existence of an alternative remedial structure for prisoners, even if it is not as effective as a suit for damages, weighs heavily against recognizing a new *Bivens* cause of action."). *Fields* cannot overrule this precedent.

The *Fields* Court attempted to evade this precedent by holding that BOP's Administrative Remedies Program does not preclude extending a *Bivens* remedy when the Complaint alleges the inmate "lacked access to alternative remedies because prison officials *deliberately* thwarted access to them." 109 F.4th at 272, 274-75 ("because Fields has alleged that officers intentionally subverted the operation of the ARP, its technical existence does not bar Fields's *Bivens* claim"). In other words, the *Fields* panel held that whether a *Bivens* remedy exists is analyzed on a micro level—i.e., does this specific plaintiff have an alternative remedy—rather than at the required macro level—whether alternative remedies exist for inmates generally.

But the *Fields* holding does not evade prior precedent; instead, it runs headlong into it. In *Bulger*, the Fourth Circuit held the administrative remedies program is the "means through which allegedly unconstitutional actions and policies can be brought to the attention" of the BOP, and "the potential unavailability of a remedy *in a particular circumstance* does not warrant supplementing that scheme." *Bulger*, 62 F.4th at 141. Under the prior panel rule, this direct conflict requires the Court in *this* case to not follow those portions of *Fields* that look to a particular plaintiff's circumstances. *McMellon*, 387 F.3d at 333 ("application of the basic rule

that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions").

Moreover, *Fields* conflicts with the Supreme Court's decision in *Egbert*, which held the relevant question is not the adequacy of an alternative remedy in light of the specific circumstances of a case. *See Egbert*, 596 U.S. at 496. Rather, the question is whether the alternative remedy is generally available and whether judicially supplementing that remedy with damages would improperly intrude into a given *field*. *Id.* ("[U]nder the proper approach, a court must ask more broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." (cleaned up)). Plaintiff Egbert argued the Border Patrol's grievance process was not an adequate alternative remedy because although he was able to file a claim that was investigated by Border Patrol, he was not able to participate in the proceedings after his complaint was filed, and there was no right to judicial review of an adverse decision. 596 U.S. at 489–90. The Supreme Court rejected that argument, explaining it had "never held that a *Bivens* alternative must afford rights to participation or appeal." *Id.* at 497–98. Because "*Bivens* is concerned solely with deterring the unconstitutional acts of individual officers," the purpose of the alternative remedy special factor analysis is to avoid encroaching on a process or remedy that Congress or the Executive has put in place. *Id.* at 496-98.

The government understands that jurists may reasonably question the adequacy of an alternative remedy in a specific case when an individual plaintiff is thwarted from using the process. But "[s]o long as Congress or the Executive has created a *remedial process* that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498 (emphasis added); *Johnson*, 112 F.4th at 1015 ("[t]he alternative remedy question is a general one, not a specific one; a macro focus, not a micro focus.") "The relevant question is not . . . whether the court should provide for a wrong that would otherwise go unredressed . . . ." *Id.* at 493. The question is whether there is a "remedial process" that generally deters federal employees from committing constitutional violations. *Id.* at 499.

This required macro focus on remedy makes sense. If a *Bivens* remedy for Eighth Amendment claims exists *only* when federal employees deliberately thwart an inmate's attempt to use the administrative remedy program, then "deliberate thwarting" is an element of the cause of action to be proven at trial. What happens if the plaintiff does not prove his allegations regarding "deliberate thwarting" at trial? Does the inmate still have a cause of action for excessive force? Presumably not. In that case, the federal employee was required to defend himself against a cause of action that never existed in the first place.

38

Moreover, *Fields* animates the danger about which *Egbert* warned. *Bivens* cases are against federal employees in their individual capacities. The employees— not the government—are personally liable for the verdicts. Under *Fields*, a federal employee can now be personally liable for a verdict when a *different* federal employee "deliberately thwarted" the inmate's grievance, even though that same federal employee would not be liable if the inmate's grievance had been processed. The *Bivens* Court's justification for implying a cause of action was to deter unconstitutional conduct by federal employees. *Egbert*, 596 U.S. at 498. Whether a federal employee can be sued in his individual capacity should not turn on whether a *different* federal employee did, or did not, accept an inmate's administrative grievance. Such a system would not achieve the desired deterrence contemplated in *Bivens*. And it is why the Court in *Egbert* disclaimed any "warrant"—i.e., authority—"to doubt that the consideration" of an administrative "grievance" was enough to constitute "an alternative remedy." 596 U.S. at 498.

### iii. Even if *Fields* is good law, it does not apply to Spivey.

Even if *Fields* can be reconciled with prior precedent, it should be construed narrowly and held inapplicable here.

In *Fields*, the Complaint pleaded that "rogue" BOP officers, who supervised the officers who allegedly committed the constitutional violations, had "deliberately thwarted" Fields's administrative grievance. 109 F.4th at 272, 274. Given the

"utmost hesitation" that courts must use when deciding whether to imply a new cause of action, *Tate*, 54 F.4th at 845, this holding should be narrowly construed to apply only to those specific circumstances, which do not exist here.

Spivey's allegations are vague and conclusory, and do not implicate officers at all, let alone "rogue officers" who supervised the defendants. Spivey's bare-bone allegation is that "USP Lee administrators identified as Ms. Bowles, Pendergrass, and Bentley, prevented plaintiff from [filing administrative remedies] by either refusing to file his . . . requests or claiming to have lost his administrative remedy request forms." JA24. He further alleges that one of the administrators, Ms. Bowles, is the wife of defendant James Bowles from Counts 1-4. JA24. That is the total of his allegations.

Moreover, Spivey does not specify for which of the counts, if any, he allegedly tried to submit administrative remedies. Nor does he allege when he purportedly tried to file his administrative remedy forms, or to *whom* he submitted them. Based on the allegations, there is no reason to believe Spivey attempted to timely file remedy forms for *any* of his claims, and even if he did, there are no allegations that make it plausible that a rogue officer deliberately thwarted each and every one of them. To be sure, even if the Court credits his allegation that some forms were lost

or denied, those allegations are so conclusory that without more, it is not plausible they were all deliberately thwarted.

Lastly, and fatally to his claim, the Administrative Remedies Program provides Spivey an alternative path to exhaust, which goes wholly unaddressed in his Complaint. If an inmate believes he or his grievance is at risk, the inmate can submit a "sensitive" request directly to the Regional Director. 28 C.F.R. § 542.14(d)(1). Yet Spivey does not allege whether he ever tried to file an alternative sensitive request outside USP Lee.

Spivey's allegations are so unspecific they would not pass the pleading or evidentiary standard for exhaustion under the Prison Litigation Reform Act. *See Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011); *Rodrigues v. Hamilton*, 2021 WL 413530, at *6 (W.D. Va. Feb. 5, 2021); *Graham v. Stallard*, 2020 WL 5778790, at *10 (W.D. Va. Sept. 28, 2020) (Dillon, J.); *Pickens v. Lewis*, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) (collecting cases). This Court should thus hold that Spivey does not fall within *Fields*' expansion of *Bivens*.

### iv. Given that *Fields* does not apply, special factors preclude extending *Bivens* to Spivey's excessive force claims.

Because *Fields* does not apply to *Spivey*, the special factors inquiry asks whether there is a single reason the Judiciary should not legislate a cause of action for his excessive force claims. *Egbert*, 596 U.S. at 492. There are many reasons not

to imply a *Bivens* remedy to Spivey's allegations, but the two most compelling are (1) the systemwide impacts of the Judiciary (instead of Congress) legislating about prison security, and (2) the existence of numerous alternative remedial measures.

As for the first, Congress is better suited to create a damages action in the field of prison administration. The Supreme Court has long recognized that "federal courts have adopted a broad hands-off attitude toward problems of prison administration," *Procunier v. Martinez*, 416 U.S. 396, 404 (1974), because "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government," *Turner*, 482 U.S. at 84–85. Most recently in *Bulger* and *Mays*, this Court recognized the "statutory scheme delegating authority over prison . . . decisions to the BOP." *Bulger*, 62 F.4th at 140; *Mays*, 70 F.4th at 205. Congress has delegated prison administration— including prison discipline—to BOP, making it a matter that is "rarely [the] proper subject[] for judicial intervention" and counseling against a judicially-created cause of action. *Egbert*, 596 U.S. at 495.

This hands-off role of the Judiciary in deference to Congress is especially appropriate in the federal prison context where matters of inmate and staff safety are at issue. As this Court has explained, "the recognition of a *Bivens* remedy in this

case would work a significant intrusion into an area of prison management that demands quick response and flexibility, and it could expose prison officials to an influx of manufactured claims." *Earle v. Shreves*, 990 F.3d 774, 781 (4th Cir. 2021). The reasoning holds true here where issues of prisoner discipline demand quick responses, flexibility, and vary greatly across situations.

Moreover, on a systemwide level, by authorizing Spivey's cause of action, the Court will invite a flood of prisoner excessive-force cases. A new cause of action here will open BOP officers to significant potential liability for the BOP's decisions about how to discipline inmates and when and how it is appropriate to restrain them. *See Mays*, 70 F.4th at 206. Line correctional officers must employ force and restrain prisoners in the ordinary course of their work. Even if they are not actually sued, the prospect of individual liability will change the way prison officials do their jobs on a daily, if not hourly, basis. It may cause them to hesitate when the situation calls for action—to protect themselves, their colleagues, or other prisoners. And those federal employees unlucky enough to be sued will face years of disruptive litigation. This uncertainty about the consequences of creating a *Bivens* remedy is itself a special factor counseling hesitation. *Egbert*, 596 U.S. at 493; *see also Mays*, 70 F.4th at 206 (courts must avoid creating a *Bivens* remedy when doing so would "'impose

liability on prison officials on a systemic level' and amount to a 'substantial burden' on government officials.").

Second, inmates have access to other remedial mechanisms, including complaints filed through the BOP's Administrative Remedy Program, suits in federal court for injunctive relief, and referrals to the Office of Inspector General. *Earle*, 990 F.3d at 780; *see also Bulger*, 62 F.4th at 140; *Mays*, 70 F.4th at 205 ("Inmates . . . have an 'alternative remedial structure' that allows them to seek equitable relief for issues related to confinement, discipline, and the like."); *Nellson*, 2023 WL 3336689, at *5 ("[T]he existence of an alternative remedial structure for prisoners, even if it is not as effective as a suit for damages, weighs heavily against recognizing a new *Bivens* cause of action."); *Silva*, 45 F.4th at 1141 ("[W]e find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim.").

In *Bulger*, for example, this Court explained that the Administrative Remedies Program is the "means through which allegedly unconstitutional actions and policies can be brought to the attention" of the BOP, and "the potential unavailability of a remedy *in a particular circumstance* does not warrant supplementing that scheme." 62 F.4th at 141. Similarly, the Department's Inspector General is required to investigate nonfrivolous allegations of criminal wrongdoing or administrative

misconduct by an employee of the Department of Justice and "refer such allegations to the Office of Professional Responsibility," or other referrals as appropriate. 5 U.S.C. app. 3 § 8E. This congressionally authorized investigatory process, as implemented by the Executive Branch, is yet another alternative remedy counseling against the creation of a damages remedy in this case. *See Egbert*, 596 U.S. at 498 (holding that if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy"); *see Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) ("Even if . . . the BOP's grievance process is not enough to deter . . . misconduct, 'the threat of an investigation through the BOP's Internal Affairs Office or [DOJ-OIG] may also serve to deter misconduct,' as aptly noted by the district court."); *see also Logsdon*, 91 F.4th at 1359 ("[A]s several other courts have . . . held since *Egbert*, . . . [DOJ-OIG] investigation procedure[s] are adequate alternative remedies." (collecting decisions)); *Robinson v. Sauls*, 102 F.4th 1377, 1346–47 (11th Cir. 2024) (same); *Jackson v. McNeil*, No. 20-35991, 2023 WL 3092302, at *1 (9th Cir. Apr. 26, 2023) (finding DOJ-OIG to be a sufficient *Bivens* alternative); *Massaquoi v. Federal Bureau of Investigation*, 2023 WL 5426738, at *2 (9th Cir. 2023) (same);

*Challenger*, 2023 WL 4287204, at *9 & n.6 (collecting "numerous" decisions holding OIG investigations are a sufficient *Bivens* alternative).

For all these reasons, special factors preclude extending *Bivens* to Spivey's excessive force claims.

### 2. Special factors preclude extending *Bivens* to Spivey's medical, dental, and mental health care claims

Multiple special factors preclude the recognition of Spivey's claims for inadequate dental, medical and mental health care.

First, to insert courts into disagreements about the proper management of medical treatment and security resources while treating conditions like Spivey's would create a serious risk of disruptive intrusion into the complexities of providing medical care in the prison setting, a responsibility Congress has delegated to the Executive Branch. 18 U.S.C. § 3621(i)(1) (charging the BOP with ensuring "each prisoner . . . has access to necessary medical care, mental health care, and medicine"); *id.* § 3622(a)(3) (authorizing the BOP to temporarily release a prisoner to obtain "medical treatment not otherwise available").

Second, as the district court correctly recognized, alternative remedial structures exist that can deter and address the kinds of misconduct that Spivey alleges. The Supreme Court has held that the existence of any alternative process for protecting the injured party's interest can counsel hesitation, even when the

alternatives may not enable the plaintiff to obtain money damages or similarly effective relief. *Ziglar*, 582 U.S. at 137.

Spivey, just as with his excessive force claims, could lodge his complaints of medical misconduct with Department of Justice's Office of Inspector General, or the BOP's internal affairs component, or seek relief through the Administrative Remedies Program.

Spivey also could have brought a claim for injunctive relief. In contrast to a *Bivens* damages claim, Congress expressly approved injunctive claims for federal prisoners. *See* 18 U.S.C. § 3626 (providing civil action remedies with respect to prison conditions). A court order requiring individual BOP defendants in their official capacity to provide Spivey with his preferred form of care could have resolved his claim.

For all these reasons, special factors counsel against the Court implying a new cause of action to Spivey's medical, dental, and mental health care claims.

## II. IN THE ALTERNATIVE, MOST OF THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Even assuming Spivey could establish a *Bivens* cause of action, the government also moved to dismiss Spivey's claims on the basis that ten of the individual defendants were entitled to qualified immunity because Spivey had failed to state any claim for an Eighth Amendment violation. The district court did not rule

on that aspect of the Motion, but because it presents a question of law and the Court can affirm on any basis available in the record, even if the Court implies a *Bivens* remedy, it should affirm dismissal of Spivey's claims against those defendants.

Qualified immunity shields public officials from suit unless their conduct, as alleged, violated a clearly established constitutional or statutory right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." *Iqbal*, 556 U.S. at 685. Where, as here, a defendant raises qualified immunity in a motion to dismiss, "the district court should resolve that threshold question before permitting discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). This is because "qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *White v. Pauly*, 580 U.S. 73, 79 (2017).

To overcome a qualified immunity defense at the motion to dismiss stage, Spivey must allege facts demonstrating that (1) the official personally violated his constitutional rights, and that (2) those rights were clearly established at the time of the alleged conduct. *See Ashcroft v. al- Kidd*, 563 U.S. 731, 735 (2011). A court has discretion to decide which of the two prongs to address first. *Id.* As to the first prong, the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations

48

omitted). Sufficient factual matter does not include conclusory, "the-defendant-unlawfully-harmed-me accusation[s]," or "naked assertions" of wrongdoing "devoid of further factual enhancement[.]" *Id.* In other words, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See id.* at 676. This requires more than a mere possibility of liability—"[f]actual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (2007).

With respect to the second prong, Spivey must show that the right allegedly violated by a particular defendant was clearly established at the time of the conduct. "The Supreme Court has repeatedly stated that courts should not examine clearly established law at too high a level of generality." *Younger v. Crowder*, 79 F.4th 373, 385 (4th Cir. 2023). Further, the right must be defined within the specific context of the case. *Id.* Courts do not require a "case directly on point," but "existing precedent must have placed the statutory or constitutional question 'beyond debate.'" *Id.* at 64 (quoting *al-Kidd*, 563 U.S. at 741).

Spivey's claims fail at both prongs for Defendants Smith, Phelps, McIntyre, Moore, Pease, Breckon, Kirby, Cunic, Bailey, and Babnew.

## A.    Defendants Smith and Phelps are Entitled to Qualified Immunity

To state a claim for Eighth Amendment excessive force, Spivey must show both an objective and subjective component. "The objective component asks whether the force applied was sufficiently serious to establish a cause of action." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). "[T]he subjective component . . . asks whether the officers" against whom the claim is brought "acted with a sufficiently culpable state of mind." *Id*. A culpable state of mind is a "demanding standard," amounting to "wantonness in the infliction of pain." *Id*. at 112-13. Whether such wantonness can be established "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id*. Moreover, liability does not attach unless there is a showing that each individual defendant, through his or her own actions, violated the Constitution. *See Iqbal*, 556 U.S. at 676.

Spivey does not sufficiently allege that Defendants Smith and Phelps were personally involved in the use of excessive force. Spivey alleges that Smith and Phelps tacitly approved of excessively tight restraints by not intervening when other BOP officers allegedly put them on Spivey, but Spivey does not allege that Smith and Phelps applied the restraints or tightened them. At most, Spivey alleges Smith did not loosen the restraints when she allegedly could have. Additionally, there are

no allegations Smith or Phelps acted maliciously or sadistically to cause Spivey harm. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Spivey's barebones allegations that Smith and Phelps did not intervene regarding his hand restraints do not sufficiently plead that Smith and Phelps acted with a culpable state of mind of wantonness. In addition, Spivey has not adequately alleged that these defendants violated clearly established law. *See District of Columbia v. Wesby*, 583 U.S. 48 (2018). Smith and Phelps are thus entitled to qualified immunity.

## B. Defendant Moore is Entitled to Qualified Immunity

Spivey alleges Defendant Moore used "excessive physical contact during pat-down searches," specifically "touching plaintiff's buttock." "[S]exual abuse can support an Eighth Amendment claim if the officer's alleged conduct is incompatible with contemporary standard of decency," but the inmate "must allege facts on which [he] could prove that the unwanted touching had some sexual aspect to it; [his] own perceptions alone that the contact was of a sexual nature are not sufficient." *Morton v. Johnson*, 2015 WL 4470104, at *6 (W.D. Va. July 21, 2015) (Moon, J.); *see also Ellis v. Elder*, 2009 WL 275316, at *3 (W.D. Va. Feb. 4, 2009) (Conrad, J.). And the inmate must still adequately allege the defendant acted with requisite malicious or sadistic intent. Applying this standard, courts have found incidents of brief physical contact during pat-down searches—even coupled with sexually offensive

remarks—did not amount to a constitutional violation. *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998). Like in those cases, Spivey has not made sufficient allegations of sexual misconduct here, let alone that Defendant Moore acted with a malicious or sadistic state of mind.

## C. Defendants McIntyre, Pease, Breckon, Kirby, Cunic, Bailey, and Babnew are Entitled to Qualified Immunity

Spivey alleges Defendants McIntyre, Pease, Breckon, Kirby, Cunic, Bailey, and Babnew violated his Eighth Amendment rights by failing to provide dental, medical, and mental health care. These allegations, however, do not rise to an Eighth Amendment violation, and regardless, Spivey does not sufficiently plead the required subjective intent, thus entitling them to qualified immunity.

Similar to excessive force, "[a]n Eighth Amendment claim for deliberate indifference to serious medical needs includes objective and subjective elements." *Langford v. Joyner*, -- 4th --, 2023 WL 2335957, at *2 (4th Cir. Mar. 2, 2023). The objective prong requires objectively showing a "sufficiently serious" medical condition. *Id.* It requires the prisoner to show he suffered a serious medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Additionally, the

prisoner must "prove that his serious medical need was not timely or properly treated." *Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001) (per curiam).

"The subjective prong requires the prison official to have acted with a sufficiently culpable state of mind, specifically, deliberate indifference to inmate health." *Langford*, 2023 WL 2335957, at *2. Negligence is not enough. *Minneci v. Pollard*, 565 U.S. 118, 129 (2012); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference requires "the prison official have actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Langford*, 2023 WL 2335957, at *2.

Thus, at the pleading stage, Spivey must "plead sufficient facts to plausibly allege that each Defendant actually knew about his serious medical condition and the risks of failing to treat him." *Id.* This standard does not "second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." *Bowring v. Godwill*, 551 F.2d 44, 48 (4th Cir. 1977); *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

For example, in *Swint v. United States*, 2025 WL 88836 (3d Cir. Jan. 14, 2025), the Third Circuit held the prisoner-plaintiff failed to sufficiently allege deliberate indifference to medical care when he allegedly had severe back pain and

was falsely told BOP could not order an MRI due to bullet fragments, but where BOP ordered alternative tests, and where no bullet fragments actually existed. Likewise, Spivey's own caselaw provides additional examples of this Court dismissing purported *Bivens* actions for failure to adequately plead deliberate indifference. *See, e.g.*, *Langford*, 62 F.4th 122, *King*, 536 Fed. Appx. 358; *Lewis*, 466 Fed. Appx. 211. *See* Br. at 24.

Just as in those cases, Spivey does not adequately plead a medical indifference claim rising to the level of an Eighth Amendment violation here. First, Spivey's claims regarding stomach pain, foot pain, dental pain, and mental health care fail to allege an objectively, sufficiently serious medical condition. Spivey's Complaint does not allege any diagnoses he received from a physician for which he was denied medical treatment. For his stomach pain, Spivey alleges Kirby administered a feces test, which acknowledges Spivey received medical care but implies he merely did not agree with the care provided. This conduct does not rise to the level of a constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (disagreement between inmate and physician over proper medical care does not state constitutional claim). Spivey's complaint also makes no allegation he ever received a diagnosis for an injury to his Achilles, demonstrating Spivey's failure to allege a sufficiently serious medical for a deliberate indifference claim. Similarly, the

complaint makes a general allegation that "upon information and belief," Spivey has a "rule-out diagnosis for major depressive disorder." But the complaint does not indicate whether that diagnosis was received prior to or after arriving at USP Lee, how that relates to the purported denial of participation in a "pre-release psychology class," or that he specifically sought treatment for that alleged diagnosis from Defendants. As such, Spivey's claims regarding his stomach, Achilles, dental, and mental healthcare fail to meet the objective prong of deliberate indifference to establish an Eighth Amendment violation.

Second, and independently, Spivey's allegations do not meet the subjective prong to establish a deliberate indifference claim. Spivey does not allege any defendant had actual knowledge of an objectively serious medical condition for which Spivey needed care. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (missing diagnosis of pituitary tumor which led to inmate's loss of sight did not amount to deliberate indifference when physicians treated symptoms presented by inmate and consulted with specialists); *Davis v. Williamson*, 208 F. Supp. 2d 631, 633 (N.D.W. Va. 2002) (finding no evidence of deliberate indifference to plaintiff's known serious medical condition when plaintiff's medical records showed he was examined and treated by medical staff on numerous occasions for all of his complaints).

Regarding dental care, Spivey merely alleges he told Pease he was suffering from "severe tooth pain." This allegation is insufficient to establish the subjective prong of a deliberate indifference claim because it does not allege Pease knew of an objective, sufficiently serious medical diagnosis to which he was deliberately indifferent. Spivey's claim against McIntyre for failure to provide care for Spivey's Achilles pain similarly fails because Spivey does not allege he ever received a sufficiently serious medical diagnosis related to his Achilles, let alone that McIntyre had knowledge of one. Spivey's claims against Kirby regarding his stomach pain fail for similar reasons it failed to meet the objective prong: Spivey alleges Kirby did provide him care—Spivey just disagreed with the care provided. Spivey's claims of deliberate indifference for mental health care meet a similar fate. Absent from his complaint is any specific allegation Defendants Cunic, Babnew, and Bailey knew Spivey had a serious mental health diagnosis for which he needed care. Therefore, none of Spivey's deliberate indifference claims meet the requisite subjective prong.

Because Spivey's deliberate indifference claims do not plead the requisite allegations to establish both prongs under controlling law, he fails to state a knowing violation of a well-established constitutional right. Therefore, Defendants McIntyre, Pease, Breckon, Kirby, Cunic, Bailey, and Babnew are entitled to qualified

immunity on Counts 5-8, and this Court could affirm the judgment as to them on this alternative basis.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request the Court affirm the judgment of the district court.

Respectfully submitted,

ZACHARY T. LEE
Acting United States Attorney

*/s/ Laura Day Taylor*
Laura Day Taylor
Assistant United States Attorney
Virginia State Bar No. 94021
Illinois State Bar No. 6289334
Western District of Virginia
P. O. Box 1709
Roanoke, VA 24008-1709
Tel: (540) 857-2250
Fax: (540) 857-2283
Email: Laura.Taylor@usdoj.gov

# CERTIFICATE OF COMPLIANCE

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word.

I further certify that this brief does not exceed 13,000 words (and is about 12,516 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/ *Laura Day Taylor*
Laura Day Taylor
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2025, I electronically filed the foregoing Response Brief of Appellees with the Clerk of the Court using the CM/ECF System, which will send notice, and constitute service, of such filing to the following registered CM/ECF user(s):  all counsel of record for the Appellant.


/s/ *Laura Day Taylor*
Laura Day Taylor
Assistant United States Attorney