No. 24-6490

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

MANDRIEZ SPIVEY,

*Plaintiff-Appellant,*

v.

MICHAEL BRECKON, et al.,

*Defendants-Appellees.*

On Appeal from the U.S. District Court for the
Western District of Virginia at Roanoke
Case No. 7:20-cv-00400-MFU-JCH

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Samuel Weiss
D Dangaran
RIGHTS BEHIND BARS
1800 M St. NW
Fnt. 1 #33821
Washington, DC 20033
202-455-4399
d@rightsbehindbars.org

Devi M. Rao
Wynne Muscatine Graham
RODERICK & SOLANGE
 MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
202-869-3449
wynnemg@macarthurjustice.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES.......................................................................ii

INTRODUCTION.....................................................................................1

ARGUMENT ...........................................................................................2

I.  A cause of action is available at *Bivens*'s first step for all of Mr. Spivey's Eighth Amendment medical, dental, and mental health care claims. ....................................................................................2

II.  A cause of action is also available for all of Mr. Spivey's claims at *Bivens*'s second step..........................................................................10

    A.  A cause of action is available for Mr. Spivey's excessive force claims under *Fields*. ......................................................................10

    B.  A cause of action is also available for Mr. Spivey's deliberate indifference claims under *Fields*. ...............................................15

III. This Court should not rule in the first instance on qualified immunity; in any case, none of the Defendants are entitled to it....16

    A.  Defendants McIntyre, Pease, Breckon, Kirby, Cunic, Bailey, and Babnew are not entitled to qualified immunity..............................17

    B.  Defendants Smith and Phelps are not entitled to qualified immunity................................................................................24

    C.  Defendant Moore is not entitled to qualified immunity. ............25

CONCLUSION ........................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Berryhill v. Schriro,*
   137 F.3d 1073 (8th Cir. 1998)..............................................................27

*Bistrian v. Levi,*
   912 F.3d 79 (3d Cir. 2018) ...............................................................17

*Brooks v. Richardson,*
   131 F.4th 613 (7th Cir. 2025) ................................................. 2, 3, 7, 9

*Bulger v. Hurwitz,*
   62 F.4th 127 (4th Cir. 2023) ....................................................... 8, 9, 11

*Carlson v. Green,*
   446 U.S. 14 (1980)................................................................................2

*Cooper v. Dyke,*
   814 F.2d 941 (4th Cir. 1987)..............................................................22

*Crawford v. Cuomo,*
   796 F.3d 252 (2d Cir. 2015) ..............................................................26

*De'lonta v. Johnson,*
   708 F.3d 520 (4th Cir. 2013)..............................................................22

*DePaola v. Clarke,*
   884 F.3d 481 (4th Cir. 2018)..............................................................19

*Earle v. Shreves,*
   990 F.3d 774 (4th Cir. 2021)..............................................................17

*Egbert v. Boule,*
   596 U.S. 482 (2022).............................................................2, 9, 11, 16

*Estelle v. Gamble,*
   429 U.S. 97 (1976)........................................................................ 8, 23

*Fields v. Federal Bureau of Prisons,*
   109 F.4th 264 (4th Cir. 2024) ..................................................... *passim*

*Formica v. Aylor,*
739 F. App'x 745 (4th Cir. 2018).........................................................18

*Freeman v. Wells,*
No. 7:17-cv-00223, 2018 WL 1595627 (W.D. Va. Mar. 31,
2018).........................................................................................................19

*Hawkins v. Allen,*
743 F. Supp. 3d 765 (E.D. Va. 2024)..................................................18

*Hernandez v. Mesa,*
582 U.S. 548 (2017)................................................................................17

*Hicks v. Ferreyra,*
64 F.4th 156 (4th Cir. 2023), *cert. denied,* 144 S. Ct. 555
(2024)......................................................................................................8, 9

*Hodges v. Meletis,*
109 F.4th 252 (4th Cir. 2024) ..............................................................15

*Hope v. Pelzer,*
536 U.S. 730 (2002)................................................... 22, 23, 24, 28

*Hudson v. McMillia*n,
503 U.S. 1 (1992)....................................................................................27

*Hurst v. Derr,*
No. 23-15523, 2024 WL 3842097 (9th Cir. Aug. 16, 2024) ..................5

*Jennings v. Univ. of N. Carolina,*
482 F.3d 686 (4th Cir. 2007)................................................................17

*Johnson v. Robinette,*
105 F.4th 99 (4th Cir. 2024) ................................................................26

*Johnson v. Terry,*
119 F.4th 840 (11th Cir. 2024) ..............................................................9

*Lee v. B.O.P. – D.S.C.C.,*
No. 5:23-5503, 2024 WL 5078061 (D. S.C. Nov. 4, 2024)....................4

*Martin v. Duffy*,
   858 F.3d 239 (4th Cir. 2017)................................................................4

*Masias v. Hodges*,
   No. 21-6591, 2023 WL 2610230 (4th Cir. Mar. 23, 2023) ....................2

*Mays v. Smith*,
   70 F.4th 198 (4th Cir. 2023) ...............................................................8

*Mays v. Springborn*,
   575 F.3d 643 (7th Cir. 2009)..............................................................27

*McMellon v. United States*,
   387 F.3d 329 (4th Cir. 2004)..............................................................11

*Nellson v. Doe*,
   No. 21-6206, 2023 WL 3336689 (4th Cir. May 10, 2023).....................9

*Perry v. Meade*,
   728 F. App'x 180 (4th Cir. 2018)................................................. 19, 22

*Philips v. Pitt Cnty. Memorial Hosp.*,
   572 F.3d 176 (4th Cir. 2009)................................................................4

*Ramos v. Lamm*,
   639 F.2d 559 (10th Cir. 1980).............................................................18

*Rowland v. Matevousian*,
   121 F.4th 1237 (10th Cir. 2024) ..........................................................9

*Scinto v. Stansberry*,
   841 F.3d 219 (4th Cir. 2016)............................................ 8, 20, 21, 23

*Scott v. Clarke*,
   64 F. Supp. 3d 813 (W.D. Va. 2014) ..................................................19

*Short v. Hartman*,
   87 F.4th 593 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631
   (2024)............................................................................. 18, 19, 23, 26

*Smith v. Smith*,
   589 F.3d 736 (4th Cir. 2009).......................................................*passim*

iv

*Solomon v. Mich. Dep't of Corr.*,
  478 F. App'x 318 (6th Cir. 2012)........................................................ 27

*Tate v. Harmon*,
  54 F.4th 839 (4th Cir. 2022) ............................................................. 8

*Thompson v. Commonwealth of Virginia*,
  878 F.3d 89 (4th Cir. 2017)..................................................... 24, 25, 27

*Thorpe v. Clarke*,
  37 F.4th 926 (4th Cir. 2022) ............................................................ 23

*Watanabe v. Derr*,
  115 F.4th 1034 (9th Cir. 2024) ...................................................... 5, 9

*Wilkins v. Gaddy*,
  559 U.S. 34 (2010)............................................................................ 24

*Wright v. Collins*,
  766 F.2d 841 (4th Cir. 1985)............................................................ 22

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017)................................................................ *passim*

## Other Authorities

28 C.F.R. § 542.14(d)(1)........................................................................ 14

Section 10(a) of BOP Program Statement 6400.03 (June 10,
  2016)............................................................................... 4, 18, 21

Fed. R. Evid. 201 .................................................................................. 4

Federal Bureau of Prisons Clinical Guidance, *Management
  of Major Depressive Disorder* (May 2014) .......................................6

## INTRODUCTION

A cause of action is available for each of Mr. Spivey's claims challenging Defendants' deliberate indifference to his serious medical needs and uses of excessive force. Both Supreme Court and Fourth Circuit precedent make that clear.

Defendants' arguments to the contrary hold no water. Again and again, Defendants assert that Mr. Spivey's claims are deficient for reasons that have nothing at all to do with *Bivens* or its progeny. Further, they repeatedly read Mr. Spivey's allegations in a light unfavorable to him, improperly drawing inferences against rather than for him. And to top it off, Defendants lodge a confounding attack on this Court's well-considered opinion in *Fields v. Federal Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024). That case is good law and squarely applies to Mr. Spivey's claims.

With little going for their *Bivens* arguments, some of the Defendants turn to qualified immunity. But this Court should decline the invitation to rule on qualified immunity in the first instance. And in any case, none of the Defendants are entitled to it.

For these reasons, this Court should reverse.

# ARGUMENT

**I.    A cause of action is available at *Bivens*'s first step for all of Mr. Spivey's Eighth Amendment medical, dental, and mental health care claims.**

Both the Supreme Court and this Circuit have repeatedly reaffirmed the availability of a cause of action for Eighth Amendment deliberate indifference claims pursuant to *Carlson v. Green*, 446 U.S. 14 (1980). *See Egbert v. Boule*, 596 U.S. 482, 490-91 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017); *see also Fields*, 109 F.4th at 269 (noting that the Supreme Court has "chose[n] not to dispense with *Bivens* altogether."); *Brooks v. Richardson*, 131 F.4th 613, 615 (7th Cir. 2025) (explaining that the Supreme Court has not yet overruled *Carlson*). Mr. Spivey's claims fall squarely under *Carlson.*

Defendants rightly abandon the district court's reasoning that Mr. Spivey's claims are distinguishable from *Carlson* because they involve conditions that were not as severe as those in *Carlson* and did not cause permanent injury or death. Response Brief at 31 (hereinafter "RB") (recognizing that this Court's decision in *Masias v. Hodges*, No. 21-6591, 2023 WL 2610230 (4th Cir. Mar. 23, 2023), rejected similar reasoning and noting that "Defendants have not raised that argument on appeal"). But

2

then Defendants concoct a different set of bespoke reasons to carve Mr. Spivey's claims out of the *Carlson* context wherein they plainly reside. *See* RB20-32. These arguments, however, fail to construe Mr. Spivey's claims in the light most favorable to him—as this Court must at this stage of the litigation. *Smith v. Smith,* 589 F.3d 736, 738 (4th Cir. 2009). Moreover, Defendants' arguments turn on factors that are wholly irrelevant to *Bivens*' first step. *Cf. Brooks,* 131 F.4th at 616 ("We . . . reject[] . . . defendants' effort to smuggle potential substantive defenses into the question whether the suit presents a new context.").

Take first Mr. Spivey's dental care claims. Defendants argue that these claims are "new" because they involve a disagreement over BOP policy regarding the definition of "urgent dental care" and "when to employ an on-site dentist." RB26. But even if a challenge to prison policy could automatically render a context "new" under *Carlson*—which neither the Supreme Court nor this Court has ever held, *see Ziglar,* 582 U.S. at 140—Mr. Spivey's dental claims do not involve such a challenge. In fact, when construed as they must be, *see Smith,* 589 F.3d at 738, these claims challenge conduct that itself *contravenes* prison policy. For example, Mr. Spivey argues that he suffered from a dental problem that

Defendants' own policies define as "[u]rgent" i.e., "severe, acute dental pain." *See* Section 10(a) of BOP Program Statement 6400.03, (June 10, 2016) p. 19.[1] And Mr. Spivey argues that by placing him on a waitlist for his severe dental pain, Pease and Breckon engaged in conduct that *violated* prison policy for urgent care. *See id.* (stating that "[m]aintaining a wait list for urgent care is prohibited); Section 10(b) of Program Statement 6400.01 (June 10, 2016) at p. 2 (stating that "[d]entists must conduct dental sick call to evaluate and treat urgent complaints").[2] So rather than taking aim at prison policy, Mr. Spivey seeks relief for conduct that failed to comply with it.

Defendants' arguments that Mr. Spivey lacks a cause of action for his rectal bleeding and stomach pain claim fare no better. Defendants assert that Mr. Spivey's claim boils down to "a disagreement with when,

---

[1] Because it is a public record, this Court may take judicial notice of the Program Statement. *See* Fed. R. Evid. 201; *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Martin v. Duffy*, 858 F.3d 239, 253 (4th Cir. 2017) (taking judicial notice of the South Carolina Department of Correction's procedures); *Lee v. B.O.P. – D.S.C.C.*, No. 5:23-5503, 2024 WL 5078061, at *1 (D. S.C. Nov. 4, 2024) (taking judicial notice of a BOP Program Statement).

[2] Defendants' argument that "Spivey does not allege [Defendants] engaged in any behavior that was contraindicated or against doctor orders or BOP policy," RB28, is thus wrong.

4

which, and how medical tests are ordered," RB26; *see also* RB29, and "the fact that [his single test] was provided by a physician assistant instead of a medical doctor." RB29. But Mr. Spivey's claim does not involve a disagreement about what kind of treatment should have been ordered or who ordered it; he argues that despite the pain and disturbing symptoms he was experiencing, Kirby provided a test *but no treatment* whatsoever. J.A. 22. Moreover, even if his claim had involved a disagreement about treatment (which it did not), that fact—though perhaps relevant to the merits—is not relevant to the first step of the *Bivens* analysis. *See Ziglar*, 582 U.S. at 140; *Watanabe v. Derr*, 115 F.4th 1034, 1036-37, 1043 (9th Cir. 2024). And similarly inapposite to *Bivens*' first step is whether Mr. Spivey "allege[d] he was eventually diagnosed with a serious medical condition." RB29; *see Ziglar*, 582 U.S. at 140; *Hurst v. Derr*, No. 23-15523, 2024 WL 3842097, at *1 (9th Cir. Aug. 16, 2024) (allowing a *Carlson* claim involving undiagnosed "severe head pain" to proceed).[3]

---

[3] Defendants' cursory and unsupported argument that Mr. Spivey made "generic allegations [that] are not similar to the specific allegations in *Carlson*," RB29, is foreclosed by the record. *See* J.A. 22. And in any case, though *Ziglar* states that the "generality or specificity of the *official action*" can be relevant to new context inquiry, 582 U.S. at 140 (emphasis added), "allegations" made at the motion to dismiss stage need not otherwise be particularly specific.

5

Defendants also fail to offer any compelling reason to distinguish Mr. Spivey's mental health claim from the claim in *Carlson*. First, Defendants argue that Mr. Spivey's claim "amount[s] to a disagreement with the assessments and provision of certain classes or care" based on his allegation that he was not permitted to enter a psychology class. RB29. But such a contention impermissibly construes Mr. Spivey's complaint in an unfavorable light. *See Smith,* 589 F.3d at 738. Construed as it must be, Mr. Spivey's argument is that he was not provided the mental health care he needed, including but not limited to Defendants' refusal to enroll him in the class.[4] J.A. 23. This is not a disagreement about class enrollment policies; it is a claim that Mr. Spivey was denied any treatment for his mental illness.

Defendants' other grab-bag arguments regarding Mr. Spivey's mental health claim have absolutely nothing to do with *Bivens*'s first step. Defendants contend that Mr. Spivey did not specify the "number of

---

[4] The BOP's clinical guidance provides that "the successful treatment plan for inmates with moderate to severe depression usually includes . . . patient education about the disease and the recovery process"—exactly what Mr. Spivey requested. *See* Federal Bureau of Prisons Clinical Guidance, *Management of Major Depressive Disorder*, 7 (May 2014), https://www.bop.gov/resources/pdfs/depression.pdf.

times" and "dates" he was denied care, or exactly "when" he received his rule-out diagnosis. RB29-30. But no court identified by Defendants—or to the knowledge of Plaintiff—has ever suggested that these factors are relevant to *Bivens*'s first step. *Cf. Ziglar*, 582 U.S. at 140; *see also Brooks*, 131 F.4th at 615 (noting that questions about the "duration" of the care at issue "seem more pertinent to the merits than to determining the scope of the holding in *Carlson*"). Nor does Mr. Spivey's claim implicate a "new categor[y] of defendants," RB29, as Defendants assert. His claims are against line-level providers, just as in *Carlson*, rather than defendants of a different "rank." Only the latter are relevant at *Bivens* first step.[5] *Ziglar*, 582 U.S. at 140.

Finally, Defendants attempt to distinguish Mr. Spivey's leg injury claim from *Carlson* by making the unsupported assertion that "judicial guidance" on the constitutional standard for leg injuries is lacking. RB30. This is easily refuted: the judiciary has made clear that officials may not knowingly deny care for serious medical needs in a way that results in

---

[5] Though *Ziglar* warns against extending *Bivens* to "new categor[ies] of defendants" at *step two*, it does not forbid *Bivens* suits against new categories of defendants at step one. *Ziglar*, 582 U.S. at 135 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

the "wanton infliction of pain." *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Denying Mr. Spivey care for the "severe pain" he experienced as a result of the assault officers committed against him did just that. J.A. 20.

Notably, in discussing *Carlson*'s applicability to this case, Defendants do not once cite, let alone address, *Hicks v. Ferreyra*, 64 F.4th 156, 166-68 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 555 (2024). As explained in the opening brief, *see* OB18, *Hicks* makes clear that a plaintiff's claim need not be factually identical to a previously recognized *Bivens* context to survive step one. And the Fourth Circuit cases upon which Defendants do rely, *see* RB16-27, each involve claims that are wholly dissimilar from those at issue in *Bivens*, *Carlson*, and every other previously recognized *Bivens* context. *Mays v. Smith* involved procedural due process and race discrimination claims, *see* 70 F.4th 198, 203 (4th Cir. 2023); *Tate v. Harmon* involved conditions of confinement claims against a number of officials, including prison leadership, *see* 54 F.4th 839, 846 (4th Cir. 2022); and *Bulger v. Hurwitz* involved a failure to

8

protect claim, 62 F.4th 127 (4th Cir. 2023).[6] Those *are* new contexts; Mr. Spivey's Eighth Amendment medical care claim is not.

Finally, to the extent Defendants rely on out-of-circuit precedent that has required a closer match with *Carlson*, *see* RB23 (citing *Rowland v. Matevousian*, 121 F.4th 1237, 1243 (10th Cir. 2024) and *Johnson v. Terry*, 119 F.4th 840, 857-62 (11th Cir. 2024)), those decisions turn on the assertion that courts should stop recognizing *Bivens* causes of action altogether. *See Rowland*, 121 F.4th at 1242; *Johnson*, 119 F.4th at 849. That reasoning is at odds with Supreme Court precedent, *Egbert*, 596 U.S. at 490-91; *Ziglar*, 582 U.S. at 131, Fourth Circuit precedent, *see Fields*, 109 F.4th at 269; *Hicks*, 64 F.4th at 166-68, and other appellate precedent. *See, e.g.*, *Brooks*, 131 F.4th at 614; *Watanabe*, 115 F.4th at 1036-37.

---

[6] Defendants also cite throughout their brief to *Nellson v. Doe*, No. 21-6206, 2023 WL 3336689 (4th Cir. May 10, 2023). *See generally* RB. But that case involved a challenge to "what [wa]s by [the plaintiff's] own account a purely administrative decision[]," rather than a "decision about an inmate's *medical* care," and thus was "more like [the claims raised in] *Tate* and *Bulger*." *Nellson*, 2023 WL 3336689, at *4.

**II.    A cause of action is also available for all of Mr. Spivey's claims at *Bivens*'s second step.**

In *Fields*, this Court held that *Bivens* may extend to new claims brought against federal prison officials if 1) the claims do not implicate prison policy or systemic practice and 2) administrative remedies were made unavailable by officials. *Fields*, 109 F.4th 264. Both of these conditions are true of Mr. Spivey's excessive force claims as well as his medical, mental health, and dental claims. J.A. 24. So, under *Fields*, *Bivens* should extend to each of these claims at step two.[7]

**A.    A cause of action is available for Mr. Spivey's excessive force claims under *Fields*.**

Defendants do not contest that, like the claims in *Fields*, Mr. Spivey's excessive force claims challenge individual officer conduct rather than prison policy or systemic practice. But, perplexingly, they argue that *Fields* was wrongly decided, that it conflicts with prior precedent, and that it does not apply to this case because Mr. Spivey does not make out a claim that his attempts to pursue administrative remedies were thwarted. RB32-41. None of these arguments is persuasive.

---

[7] As explained above, a *Bivens* cause of action is available for Mr. Spivey's medical, mental health, and dental claims at step one. This alternative argument applies to these claims only if this Court disagrees with Mr. Spivey's arguments as to step one.

10

Defendants begin with the puzzling argument that *Fields*—a detailed opinion for which this Court denied en banc review—was "wrongly decided." RB34. *Fields* was not wrongly decided for the reasons this Court has already explained. *See Fields*, 109 F.4th at 272-76 (explaining that the several factors counseling against the extension of *Bivens* did not apply with great "force" where prison policy was not implicated and access to administrative remedies were thwarted).

And more to the point: whether or not *Fields* was wrongly decided (which it was not), it is binding. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *[e]n banc.*" (internal quotation omitted) (alteration in original)).

Although this Court is required to disregard later precedent when it conflicts with earlier precedent, *see McMellon*, 387 F.3d at 333, that is not the situation here. Contrary to Defendants' argument, RB36-37, *Fields* is consistent with this Court's holding in *Bulger*, 62 F.4th at 141, and the Supreme Court's decision in *Egbert*, 596 U.S. at 490-91. In each of those cases, an extension of *Bivens* was denied where the plaintiff was

11

unable to access the administrative remedy process due to deficiencies with the process itself. *Fields*, 109 F.4th at 274. *Fields* thoughtfully considered both holdings and rightly determined that they do not apply where access to the administrative remedy process was deliberately thwarted. *Id.* at 271, 274.[8] That is so, this Court explained, because allowing a case to proceed in court due to limitations in the remedial process itself would constitute judicial intrusion into an executive branch system, whereas when the administrative remedy process itself "is not the problem," and instead "the problem [i]s the intentional improper conduct of . . . individual officers" who "deprived [the plaintiff] of access to the [administrative remedy process]," there is no risk of judicial intrusion into executive functions. *Id.* at 274. *Fields*, then, itself makes clear that it is wholly consistent with *Bulger* and *Egbert*.[9]

---

[8] In fact, *Fields* even quoted the very language from *Bulger* upon which Defendants rely. *Fields*, 109 F.4th at 271 ("[T]he potential unavailability of a remedy in a particular circumstance does not warrant supplementing that [remedial] scheme." (quoting *Bulger*, 62 F.4th at 141)).

[9] Because *Fields* is binding law, it cannot be overridden by Defendants' policy arguments. And in any case, those arguments are of relatively little weight in the present case. Even if *Fields* allows one federal official to be held liable in court when a different official deliberately thwarted a prisoner's administrative remedies, *see* RB39, that is of less concern, where, as here, there is evidence that at least one of the officers who thwarted Mr. Spivey's access was working in concert with or on behalf of

12

Defendants separately argue, unconvincingly, that even if *Fields* is binding precedent, it does not apply to Mr. Spivey's claims. *See* RB39-41. Specifically, Defendants contend that Mr. Spivey's allegations are too "vague and conclusory" to make out a claim that administrators thwarted his efforts, thus distinguishing his case from *Fields*. RB40. Not so. Mr. Spivey expressly argued that administrators "prevent[ed]" him from pursuing administrative remedies "by either refusing to file his administrative remedy requests or claiming to have 'lost' his administrative remedy request forms," and one administrator did so "because she was the wife" of one of the officers who used excessive force against Mr. Spivey. J.A. 24. These allegations more than suffice to make out a claim that officials deliberately thwarted Mr. Spivey's efforts to pursue administrative remedies—especially at this stage of the litigation, where all allegations must be construed in his favor. *See Smith,* 589 F.3d at 738.

As for Defendants' contention that Mr. Spivey does not "specify for which of the counts, if any, he allegedly tried to submit administrative

---

one of the officers who acted unconstitutionally. *See* J.A. 24 (contending that one of the administrators thwarting Mr. Spivey's efforts was the wife of Bowles, who directed the assault on Mr. Spivey).

13

remedies," RB40, that too is blatantly contradicted by the record. *See* J.A. 24 (making clear that Mr. Spivey sought remedies for the uses of excessive force and deliberate indifference by each of the Defendants in this appeal). Moreover, Mr. Spivey was not required at the motion to dismiss stage to specify exactly "when" or "to *whom* he submitted" his forms, and the absence of those details certainly does not permit this Court to conclude, as Defendants assert, "there is no reason to believe Spivey attempted to timely file remedy forms for *any* of his claims." RB40-41; *see Smith,* 589 F.3d at 738.

Finally, Defendants' argument that Mr. Spivey had "an alternative path to exhaust," RB41, is wrong. Defendants assert that if someone "believes he or his grievance is at risk," he "can submit" a "'sensitive' request directly to the Regional Director" under 28 C.F.R. § 542.14(d)(1). *Id.* But this provision is specifically for situations in which an "inmate's safety or well-being would be placed in danger if the Request became known at the institution." 28 C.F.R. § 542.14(d)(1). This was not the case for Mr. Spivey: he never alleged any fear for his safety were his complaints to become known.

*Fields* plainly governs this case, and none of the "alternative factors" relevant to step two counsel against extending *Bivens* here.[10]

### B.    A cause of action is also available for Mr. Spivey's deliberate indifference claims under *Fields*.

Defendants do not grapple at all with *Fields*'s application to Mr. Spivey's medical, mental health, or dental claims. *See* RB46-47. And Defendants' argument that *Bivens* should not extend to these claims merely because alternative remedial structures exist—even though they were deliberately made unavailable to Mr. Spivey—is foreclosed by *Fields. See Fields*, 109 F.4th at 274. Moreover, contrary to Defendants' contention, Mr. Spivey could not have brought claims for injunctive relief, as any injunctive claims related to Mr. Spivey's medical treatment at USP Lee would have become moot as soon as he transferred facilities and was provided care. *See Hodges v. Meletis*, 109 F.4th 252, 256 n.5 (4th Cir.

---

[10] Even if *Fields* did not apply, no "special factors" would preclude a *Bivens* remedy here. *Cf*. RB41-47. For example, contrary to Defendants' argument that Mr. Spivey's claims would "flood" the courts, RB43, the number of state prisoners and people in jails—who do have a cause of action under section 1983—dwarfs that of the federal prison population, and the courts have well-worn mechanisms for handling such claims, such as the PLRA, qualified immunity, and the stringent substantive standards for such claims.

2024).[11] And as explained above, Defendants' assertion that Mr. Spivey's claims involve "disagreements about the proper management of medical treatment and security resources," RB46, fails to construe the complaint in the light most favorable to him. *See Smith*, 589 F.3d at 738.[12] For these reasons, if this Court concludes that Mr. Spivey's medical deliberate indifference claims arise in a new context, those claims should survive *Bivens*'s second step under *Fields*.

### III.   This Court should not rule in the first instance on qualified immunity; in any case, none of the Defendants are entitled to it.

Some of the Defendants attempt to evade the *Bivens* question by arguing that they are entitled to qualified immunity.[13] RB47-56. But the

---

[11] Defendants argue that Mr. Spivey "could lodge his complaints of medical misconduct with Department of Justice's Office of Inspector General, or the BOP's internal affairs component." RB47. But these avenues are *always* available to federal prisoners, and not allowing claims to go forward in light of these avenues would effectively eliminate *Carlson* claims altogether, which the Supreme Court has repeatedly declined to do. *See Egbert*, 596 U.S. at 490-91; *Ziglar*, 582 U.S. at 131.

[12] Defendants also argue that it is not "plausible that a rogue officer deliberately thwarted each and every one of" Mr. Spivey's remedies. RB40. But Mr. Spivey alleges that multiple officers thwarted his efforts. *See* J.A. 24 (identifying three prison "administrators"). And his allegations must be read in the light most favorable to him. *See Smith*, 589 F.3d at 738.

[13] Bowles, Mullins, and Cantrell do not argue that they are entitled to qualified immunity for their use of excessive force. And although Smith,

district court did not address qualified immunity, and this Court should not do so in the first instance.[14] *See Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 702 (4th Cir. 2007) (declining to consider qualified immunity where the district court did not address the question and defendants gave it "limited treatment"). Nevertheless, were this Court to reach the question, it should hold that none of the Defendants are entitled to qualified immunity.

### A. Defendants McIntyre, Pease, Breckon, Kirby, Cunic, Bailey, and Babnew are not entitled to qualified immunity.

Mr. Spivey plausibly alleged that McIntyre, Pease, Breckon, Kirby, Cunic, Bailey, and Babnew violated his clearly established Eighth Amendment rights. Defendants' conclusory assertions to the contrary fail to construe Mr. Spivey's complaint properly.

---

Phelps, and Moore argue that they are entitled to qualified immunity for Mr. Spivey's Eighth Amendment excessive force claims, they do not challenge on qualified immunity grounds his alternative Fourth Amendment claims. *See* RB50-51.

[14] Moreover, determining whether a *Bivens* remedy is available is "antecedent" to any question about the merits of Mr. Spivey's claims, *see Hernandez v. Mesa*, 582 U.S. 548, 553 (2017), and should be addressed first. *See Earle v. Shreves*, 990 F.3d 774, 779 (4th Cir. 2021); *Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018) ("[T]hreshold questions are called that for a reason, and it will often be best to tackle head on whether *Bivens* provides a remedy, when that is unsettled.").

17

First, Defendants argue that each of Spivey's claims "fail to allege an objectively, sufficiently serious medical condition[s]." RB54. To the contrary, his dental conditions—including dental carries (a.k.a. cavities), pulpitis, and "severe tooth pain," resulting in a broken tooth, J.A. 21—easily satisfy the Eighth Amendment's objective prong. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) ("[A] tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000))); *Hawkins v. Allen*, 743 F. Supp. 3d 765, 775 (E.D. Va. 2024) ("[A] tooth cavity presents an objectively serious medical condition . . . ."); *see also Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980) ("[D]ental care" has been recognized as "one of the most important medical needs of inmates.").[15]

---

[15] In fact, Defendants' own policies confirm this conclusion. BOP policy makes clear that "severe, acute dental pain" is of "the highest priority" and "[m]aintaining a wait list for [it] is prohibited." *See* Section 10(a) of BOP Program Statement 6400.03 (June 10, 2016) p. 19. Such policy "can serve as a proxy for when an inmate's medical need is so obvious that even a lay person would easily recognize it." *Short v. Hartman*, 87 F.4th 593, 613 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024).

So too does his "history of significant mental health issues, including . . . a rule-out diagnosis for major depressive disorder." J.A. 23; *see DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) ("Courts treat an inmate's mental health claims just as seriously as any physical health claims."). Indeed, Cunic, Bailey, and Babnew do not contest that such mental health conditions present a serious medical need for purposes of the Eighth Amendment. Instead they argue that Mr. Spivey did not specify when he received his diagnosis and did not allege that "he specifically sought treatment for that alleged diagnosis." RB55. But that contention fails to construe all facts and draw all inferences in Mr. Spivey's favor, *see* J.A. 23, as is required at this stage of the litigation. *See Short*, 87 F.4th at 603; *Smith*, 589 F.3d at 738.

Mr. Spivey's rectal bleeding and stomach pain claim satisfies the objective prong as well. *See Perry v. Meade*, 728 F. App'x 180, 181 (4th Cir. 2018) (holding that the objective prong was met where the plaintiff experienced "intense pain and rectal bleeding and dizziness"); *Scott v. Clarke*, 64 F. Supp. 3d 813, 823-24 (W.D. Va. 2014) (classifying "chronic rectal bleeding" as one of the "serious medical needs" unnamed class members experienced); *Freeman v. Wells*, No. 7:17-cv-00223, 2018 WL

19

1595627, at *4 (W.D. Va. Mar. 31, 2018) (holding that the plaintiff stated plausible Eighth Amendment claims for denial of medical care for his ulcerative colitis symptoms of stomach pain and rectal bleeding). And so do the injuries and "severe pain" he experienced after officers assaulted him. J.A. 19-20. Moreover, contrary to Defendants' assertion, RB54, whether Mr. Spivey received a diagnosis for these conditions is irrelevant, as a claim satisfies the objective prong as long as the need for care is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto*, 841 F.3d at 225.

Defendants next argue that Mr. Spivey fails to meet the Eighth Amendment's subjective prong because none of the Defendants were aware of the seriousness of the conditions he was experiencing.[16] RB56. That is wrong. First, a defendant's awareness of the risk posed by a medical need can be shown through "circumstantial evidence," including

---

[16] Defendants do not—and cannot at this stage—contest that Mr. Spivey alerted them to his conditions: Mr. Spivey told Breckon and Pease about his "severe tooth pain," *see* J.A. 21; Kirby about his rectal bleeding and stomach pain, *see* J.A. 22; and McIntyre about the "severe" pain he was experiencing in his Achilles tendon and calves. *See* J.A. 20. To the extent Cunic, Babnew, and Bailey argue that they were not told of Mr. Spivey's history of mental illness and rule-out depression diagnosis, that contention relies on an unfavorable reading of the complaint. *See* J.A. 23.

20

the fact the risk was "obvious." *Scinto*, 841 F.3d at 232. Mr. Spivey's "severe" tooth pain, rectal bleeding and stomach pain, "history of significant mental health issues" including a "rule-out diagnosis for major depressive order," and post-assault injury causing "severe" leg pain, J.A. 22-23, each "obvious[ly]" require medical care. *Scinto*, 841 F.3d at 232.[17] Moreover, Defendants Breckon and Pease would have known that the "severe tooth pain" about which Mr. Spivey told them, J.A. 21, required urgent attention because BOP policy explicitly mandates that a prisoner experiencing "severe, acute dental pain" "be seen by a dentist within 3 business days." *See* Section 10(a) of BOP Program Statement 6400.03 (June 10, 2016) p. 19.

Furthermore, Kirby may not avoid constitutional liability for deliberate indifference on the ground that he provided Mr. Spivey one fecal test. *See* RB56. A fecal test is not *treatment*; it is just a diagnostic tool that did nothing to alleviate Mr. Spivey's pain or bleeding or treat his underlying condition. And this Court has made clear that providing some care—and even some amount of treatment—does not defeat a

---

[17] Similar to the objective prong, no "diagnosis" is necessary for Defendants to be aware of the seriousness of a condition if the seriousness is "obvious." *See Scinto*, 841 F.3d at 232; *cf*. RB56.

21

deliberate indifference claim unless the care is "constitutionally adequate." *De'lonta v. Johnson,* 708 F.3d 520, 525-26 (4th Cir. 2013); *Cooper v. Dyke,* 814 F.2d 941, 945 (4th Cir. 1987); *Perry,* 728 F. App'x at 182. Indeed, *Wright v. Collins,* upon which Defendants rely, RB54, does not hold to the contrary, as the plaintiff in that case *did* receive adequate treatment for his condition. 766 F.2d 841, 844 (4th Cir. 1985) (noting that the plaintiff received physical therapy and a neck brace for injuries sustained after a fall). So Mr. Spivey satisfies both the objective and subjective prongs of the Eighth Amendment for each of his medical care claims, thus barring McIntyre, Pease, Breckon, Kirby, Cunic, Bailey, and Babnew from qualified immunity on the first prong of the analysis.

And each of these Defendants also lose on prong two of the qualified immunity analysis—a conclusion Defendants hardly contest. *See* RB56. The central principle undergirding prong two is that of "notice:" the law must suffice "to ensure that before [officials] are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz,* 533 U.S. 194, 206 (2001)). Sufficient notice can arise from "general constitutional rule[s]" that "apply with obvious clarity to the specific conduct in question," *id.* at 741 (quoting

22

*U.S. v. Lanier*, 520 U.S. 259, 271 (1997)), such that "officials can still be on notice . . . even in novel factual circumstances." *Id.* Moreover, "under this Court's precedent, qualified immunity is generally not available at all for deliberate indifference claims." *Short*, 87 F.4th at 615; *see also Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022) ("[W]hen plaintiffs have made a showing sufficient to demonstrate an intentional violation of the Eighth Amendment, they have also made a showing sufficient to overcome any claim to qualified immunity." (internal quotations omitted)).

Mr. Spivey's claims thus overcome the second prong of the qualified immunity analysis—at least twice over. First, each claim involves deliberate indifference on the part of Defendants, barring qualified immunity. *Short*, 87 F.4th at 615. But even putting that aside, the law has long established that prisoners have an Eighth Amendment right "to receive adequate medical care and to be free from officials' deliberate indifference to their known medical needs." *Scinto*, 841 F.3d at 236; *see Estelle*, 429 U.S. at 104-05 (holding that "delaying access to medical care" is a kind of "deliberate indifference to serious medical needs of prisoners [that] constitutes the 'unnecessary and wanton infliction of pain'

23

proscribed by the Eighth Amendment." (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976))). Defendants were therefore fairly on notice that their failure to provide timely care to Mr. Spivey for his serious medical needs violated constitutional standards. *See Hope*, 536 U.S. at 741.

**B.    Defendants Smith and Phelps are not entitled to qualified immunity.**

Smith and Phelps are not entitled to qualified immunity either. These Defendants do not dispute that the force used by Bowles, Mullins, and Cantrell was unconstitutional and violated clearly established law— nor could they. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). But Smith and Phelps contend that they were not "personally involved" in that use of force and only "tacitly" approved it. RB50. Once again, their argument misconstrues the record and is irrelevant as a matter of law.

With respect to the record, Smith actively—rather than "tacitly," RB50—approved of the use of force against Mr. Spivey. J.A. 25. After Mr. Spivey told Smith that the restraints were too tight, she "checked" them and "falsely stated that [they] were not too tight." J.A. 17-18. Moreover, as a matter of law, Phelps and Smith need not do any more than decline to intervene in the assault on Mr. Spivey to be liable for deliberate indifference under the Eighth Amendment. *See Thompson v.*

24

*Commonwealth of Virginia,* 878 F.3d 89, 107-08 (4th Cir. 2017). Phelps

and Smith do not—and cannot—dispute that they engaged in deliberate

indifference by failing to intervene.[18] Nor do or can they dispute that such

deliberate indifference—refusing to intervene to prevent an assault on a

prisoner—was clearly established to be unconstitutional at the time they

refused to come to Mr. Spivey's aid. *Id.*[19] Thus, neither Smith nor Phelps

are entitled to qualified immunity for failing to stop the force used

against Mr. Spivey.

### C.   Defendant Moore is not entitled to qualified immunity.

Moore's conduct also violated Mr. Spivey's clearly established

Eighth Amendment rights, barring Moore from qualified immunity.

Defendants do not dispute that sexual abuse by a prison guard may

---

[18] Defendants cite the wrong standard in arguing that Mr. Spivey was required to allege that "Smith or Phelps acted maliciously or sadistically to cause [him] harm." RB50-51. The test for whether an officer unlawfully failed to intervene to prevent another officer's use of excessive force against a prisoner requires showing: "(1) [the plaintiff] was exposed to a 'substantial risk of serious harm' and (2) [the defendant] 'kn[ew] of and disregard[ed]' that risk." *Thompson,* 878 F.3d at 107 (alterations in original) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

[19] This Court has also made clear that even if an assault is factually dissimilar to assaults previously considered by the courts, still the law is clearly established that failure to intervene violates the Eighth Amendment. *Thompson,* 878 F.3d at 109-10.

25

violate the Eighth Amendment. *See* RB51; *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024). Rather, they contend that Mr. Spivey did not adequately make out a claim that Moore's conduct was sexual, nor did he allege that Moore "acted with a malicious or sadistic state of mind." RB51-52. But this argument once again fails to construe properly both the record and law.

Construing the facts in the light most favorable to Mr. Spivey, this Court may infer that Mr. Spivey's claims—that Moore unnecessarily touched a private area, Mr. Spivey's buttocks—includes a sexual element. *See Short*, 87 F.4th at 603. But even if it did not, the fact that Moore's touching was done for the purpose of "sadistically harassing and humiliating" Mr. Spivey, rather than for any penological purpose, J.A. 24, suffices for the purpose of an Eighth Amendment excessive force claim. *See Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (holding "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire *or to humiliate the inmate*," violates the Eighth Amendment (emphasis added)); *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). And

26

insofar as the out-of-circuit cases that Defendants cite are instructive at all, they counsel in favor of allowing Mr. Spivey's claim to proceed, as both cases were decided at summary judgment, demonstrating that claims like Mr. Spivey's require fact-intensive inquiries that should at least make it past the motion to dismiss stage. *See Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 319 (6th Cir. 2012); *Berryhill v. Schriro*, 137 F.3d 1073, 1074 (8th Cir. 1998).

Mr. Spivey's claim against Moore also satisfies the second prong of the qualified immunity analysis, as Eighth Amendment case law has long made clear that conduct meant to cause harm with no penological purpose is unlawful. *See Hudson v. McMillia*n, 503 U.S. 1, 7 (1992); *Thompson*, 878 F.3d at 105 ("[T]he Eighth Amendment protection against the malicious and sadistic infliction of pain and suffering applies in a diverse range of factual scenarios. That unifying thread provides fair notice to prison officials that they cannot, no matter their creativity, maliciously harm a prisoner on a whim or for reasons unrelated to the government's interest in maintaining order."). Moreover, even without this precedent, it is obvious that repeated touching—sexual or

27

otherwise—for the purpose of humiliating violates the Eighth Amendment. *Hope*, 536 U.S. at 741.

Moore is therefore not entitled to qualified immunity.

## CONCLUSION

For these reasons, this Court should reverse the judgment of the district court and remand for further proceedings.

Dated: April 21, 2025                    Respectfully submitted,

                                         */s/ Wynne Muscatine Graham*

Samuel Weiss                             Devi M. Rao
D Dangaran                               Wynne Muscatine Graham*
RIGHTS BEHIND BARS                       RODERICK & SOLANGE
1800 M St. NW                             MACARTHUR JUSTICE CENTER
Fnt. 1 #33821                            501 H St. NE, Suite 275
Washington, DC 20033                     Washington, DC 20002
202-455-4399                             202-869-3449
d@rightsbehindbars.org                   wynnemg@macarthurjustice.org

*Counsel for Plaintiff-Appellant*

*UCLA Law School students Jenny Aranda, Naomi Barlava, Lauren Cohen, and Yalda Saii substantially contributed to the preparation of this brief through the Prisoners' Rights Clinic.

28

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,076 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: April 21, 2025                     */s/ Wynne Muscatine Graham*
                                          Wynne Muscatine Graham

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2025, I electronically filed the foregoing *Reply Brief of Plaintiff-Appellant* with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 21, 2025                          */s/ Wynne Muscatine Graham*
                                               Wynne Muscatine Graham